UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

GREEN STONES, INC.,
a Michigan corporation,
and JEFFREY YATOOMA, an
individual,                                        Case No.
                                                   Hon.

        Plaintiffs,

v.


BIRCH RUN TOWNSHIP, a
Michigan municipal corporation,

        Defendant.
_____

JOELSON ROSENBERG, PLC
By: Jason C. Yert (P67144)
Emily R. Warren (P76675)
Attorneys for Plaintiffs
30665 Northwestern Hwy, Suite 200
Farmington Hills, MI 48334
(248) 626-9966; f (248) 855-2388
jyert@jrlawplc.com
ewarren@jrlawplc.com
_____

## **COMPLAINT**

        NOW COME Plaintiffs Green Stones, Inc., ("Green Stones") and Jeffrey

Yatooma ("Yatooma") (together "Plaintiffs"), by and through their attorneys, and

for their Complaint against Defendant, Birch Run Township ("Defendant" or

"Township") state as follows:

1

## INTRODUCTION

1.     Plaintiff Green Stones, Inc., is a Michigan corporation whose primary shareholders are Plaintiff Jeffrey Yatooma and non-party Joey P. Kejbou. Mr. Kejbou is a licensed Michigan attorney (P71026) who specializes in cannabis and real property law. Mr. Yatooma has been operating businesses in the cannabis industry in Michigan for many years. Mr. Kejbou and Mr. Yatooma are both extremely experienced and well-qualified to own and operate cannabis businesses and all Plaintiffs have been approved for licensing prequalification[1] by the Cannabis[2] Regulatory Agency ("CRA"). Mr. Kejbou has held an interest in entities that have been awarded a total of nine (9) marijuana establishment licenses by the CRA, including four (4) for adult-use marijuana retailer and four (4) for medical marijuana provisioning center. Despite the collective experience and qualifications of its shareholders, the Township has almost certainly denied Green Stones the opportunity to compete for an adult-use marijuana retailer license in the Township because the Township's unconstitutional licensing scheme unfairly favors certain applicants over others based on their professions, certifications, licensure, veteran status, property ownership, and residency.

---

[1] Green Stones, Inc., is "prequalified" under AU-ER-002128. Kejbou and Yatooma are "prequalified" as supplemental applicants.
[2] Formerly the Marijuana Regulatory Agency or "MRA."

## PARTIES, JURISDICTION, VENUE

2.     Plaintiff Green Stone, Inc., is a Michigan corporation that seeks to open an adult-use retail establishment in the Township.

3.     Plaintiff Jeff Yatooma is a shareholder of Green Stone.

4.     Plaintiffs are submitting an application for an adult-use marijuana retailer license to the Township on or before April 22, 2022, the current deadline for applications established by the Township.

5.     Defendant Birch Run Township is a Michigan municipal corporation located in Saginaw County, Michigan.

6.     Plaintiffs seek declaratory and injunctive relief declaring invalid provisions of the Township's Recreational Marijuana Ordinance.

7.     Plaintiffs assert violations of the Commerce Clause of the United States Constitution, along with violations of the Equal Protection and Due Process Clauses of the Michigan Constitution.

8.     This Court has original jurisdiction over claims arising under federal law regardless of the amount in controversy or citizenship of the parties under 28 U.S.C. § 1331.

9.     This Court has supplemental jurisdiction over Plaintiffs' state-law claims for violations of the Michigan Constitution under 28 U.S.C. § 1367 and violations of the Michigan Regulation and Taxation of Marihuana Act.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because the Township is a municipality located within Saginaw County and the events giving rise to this cause of action occurred in this judicial district.

11.     Venue and jurisdiction are in all other respects proper in this Court.

## GENERAL ALLEGATIONS

### The Michigan Regulation and Taxation of Marihuana Act

12.     In November of 2018, Michigan passed the Michigan Regulation and Taxation of Marihuana Act, Initiated Law 1 of 2018, MCL § 333.27951, *et seq.* ("MRTMA").

13.     The MRTMA provides that recreational or "adult-use" marijuana is legal in a municipality unless the municipality enacts an ordinance to "completely prohibit or limit the number of marihuana establishments within its boundaries." MCL § 333.27956(1).

14.     The MRTMA permits municipalities to "adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal license…" MCL § 333.27956(3).

15.     Municipalities choosing to permit a number of adult-use marijuana establishments within its boundaries "may not impose qualifications for licensure that conflict with this act or rules promulgated by the [CRA]." MCL § 333.27956(3).

16.     A municipality that limits the number of adult-use marijuana establishments that may be licensed in the municipality, the municipality "shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality."  MCL §333.27959(4).

### The Ordinances

17.     The Township adopted Ordinance No. 2022-01 ("Zoning Ordinance") on February 8, 2022, effective February 24, 2022, which amended the Township Zoning Ordinance to add "Marihuana Establishment operating under the [MRTMA] as a use permitted with a Special Land Use Permit in a C-1 or C-2 Commercial Zoning District."  (Exhibit 1, p. 1, ¶ 1.)

18.     The Township adopted Ordinance No. 2022-02 ("Ordinance") on February 8, 2022, effective March 25, 2022, titled "Birch Run Township Prohibition of Certain Types and Quantities of Recreational Marihuana Establishments Police-Power Ordinance."  (Exhibit 2).

19.     The Ordinance purports to prohibit all recreational marihuana establishments within the Township except for "marihuana retailer" and "marihuana secure transporter."  (Exhibit 2, ¶ IV).

20.    The Ordinance permits licensure for two (2) marihuana retailers as defined by MCL § 333.27953(n) and four (4) marihuana secure transporters as defined by MCL § 333.27953(o). (Exhibit 2, ¶ IV(1-2)).

21.    The Ordinance requires applicants to apply for licensure on an "Application form to be provided by the Township board."  (Exhibit 2, ¶ VII(1)).

22.    Because the Township limited the number of licenses available, it created a competitive licensing scheme, including an Ordinance and various Resolutions.

23.    The Ordinance provides that the applications will be "reviewed and scored by the Township, or the Township's designee," and that the "scoring criteria shall be developed and promulgated by the Township." *Id.*

24.    The Ordinance requires a minimum score of sixty (60) and provides that if the number of applicants exceeds the number of licenses available, the license(s) will be awarded to the applicant who submitted the highest-scoring application(s). *Id.*

25.    Section VII(8) of the Ordinance states that if the number of applications exceeds the number of available licenses, the license(s) "shall be awarded pursuant to a merit-based criteria system."

26.    The Ordinance expressly prohibits *medical* marihuana establishments: "Nothing herein shall be deemed to permit medical-marihuana establishments…as

6

all such medical-marihuana establishments are prohibited in Birch Run Township."
(Exhibit 2, ¶ XIII).

27.    The required application form and scoring criteria are not stated in the
Ordinance.

## The Scorecard

28.    On or about February 8, 2022, the Township adopted Resolution No.
2022-09, titled "Resolution to Approve Recreational Marihuana Scorecard."
(Exhibit 3, "Scorecard").

29.    There are 79 points available to each applicant, with 60 points as the
minimum.

30.    The Scorecard allocates points for various criteria established by the
Township to assess the applications.

31.    The Scorecard awards points to an applicant if "[a]t least 1 owner is an
honorably discharged military veteran," and "[a]t least 1 owner has an advanced
medical degree," and "[a]t least 1 owner owns the building where the recreational
marijuana facility is located."  (Exhibit 3, p. 1).

32.    The Scorecard awards points to an applicant if it shows certain amounts
of "capitalization to operate and maintain" the facility.  (Exhibit 3, p. 2).

33.     The Scorecard awards points to an applicant if the applicant "holds other commercial licenses" or "holds and maintains documented medical certifications or licenses."  (Exhibit 3, p. 4).

34.     The Scorecard awards points to an applicant if it "has not been involved and is currently not involved in any business litigation."  (Exhibit 3, p. 3).

35.     Applicants can receive points for describing a staffing plan to "[e]mploy the chronically underemployed."  (Exhibit 3, p. 4).

### The Application Form

36.     On or about February 8, 2022, the Township adopted Resolution No. 2022-08, titled "Resolution to Approve Recreational Marihuana Application." (Exhibit 4).

37.     The Township posted a copy of the Application (Exhibit 5) and "Checklist/Instructions" (Exhibit 6) on its website, http://www.birchruntwp.com/.

38.     The Application requires applicants to include copies of "all information required to be submitted to the State of Michigan related to a recreational marihuana license" and "all information related to matters addressed in Birch Run Township Recreational Marihuana Checklist."

39.     The Application includes an affidavit wherein the affiant is required to attest that he or she "understand[s] that this application is for conditional approval to operate a **medical** marijuana facility or facilities within Birch Run Township…"

8

and promises to "not operate a **medical** marijuana facility or facilities within Birch Run Townships unless and until" obtaining approval under the Township's Zoning Ordinance. (Exhibit 5, emphasis added).

40.    The Application requires "each person listed on the information submitted to the State of Michigan under the Regulations and Rules promulgated by the Marijuana Regulatory Agency" to also complete the disclosure form and submit a copy of "his/her Michigan ID or Driver's license."

41.    The Application requires completion of "[a] separate form for each individual listed on the **Medical** Marihuana Facility Permit application is required, including applicant, stakeholders, operators and employees."

42.    The disclosure form within the Application requires signature attesting that the applicant's "ace, color, sex, age, religion, national origin, height, weight, marital status, familial status, **veteran status**, citizenship, handicap/disability, gender identity, sexual orientation, genetic information, or as otherwise in accordance with all Federal or State law, or local regulations will not be made part of my application **and that none of these items will be considered in the review of my permit application**." (Exhibit 5, emphasis added).

## The Township's Vague, Inconsistent, and Discriminatory Licensing Scheme

43.    At least twelve of the criteria included in the Scorecard are unconstitutional, discriminatory, inconsistent with the Township's Ordinance and

Application materials, inconsistent with MRTMA, and/or so vague as to be incomprehensible.

*Veteran Status*

44.    The Scorecard purports to award points to an applicant if at least one *owner* is an honorably discharged military veteran.  (Exhibit 3, p. 1).

45.    The Ordinance and Resolutions do not define "owner" or state any threshold ownership interest, so it is unclear whether an applicant would receive a point if an honorably discharged military veteran owned, for example, a 1% interest in the applicant.

46.    This aspect of the Scorecard is contradicted by the Application, which states that the applicant's "veteran status" will ***not*** be considered in the review of the Applications.  (Exhibit 5).

*Medical Professionals and Commercial Licensees*

47.    The Scorecard purports to award points to an applicant if at least one owner has "an advanced medical degree"  (Exhibit 3, p. 1) and "holds and maintains documented medical certifications or licenses."  (Exhibit 3, p. 3).

48.    The term "advanced medical degree" is not defined in the Ordinance or Resolutions.

49.    It is unclear how much of an ownership interest an individual must have in an applicant to earn the points for an owner having an "advanced medical degree."

50.    There is no legitimate government interest for favoring holders of "advanced medical degrees" or "documented medical certifications or licenses" as licensees to operate a *recreational* marijuana facility, particularly where the Township expressly forbids *medical* marijuana establishments.  (Exhibit 2, ¶ VIII).

51.    The Scorecard purports to award a point to an applicant that "holds other commercial licenses."  (Exhibit 3, p. 3).

52.    The "Description" for this criterion in the Scorecard is "Business Diversification," which implies that a qualifying "commercial license" would be unrelated to the operation of other marijuana establishments.

53.    "Commercial licenses" is not a defined term, and it is unclear what type of licenses would qualify an applicant to earn a point in this category or what legitimate government interest exists to justify favoring holders of some other "commercial license" to operate a marijuana facility.

***Compliance and Litigation***

54.    The Scorecard purports to award a point to an applicant that has "[n]o history of federal, state, or local complaints/incidents."  (Exhibit 3, p. 3).

11

55.     The term "incident" is not defined and the scoring criterion does not distinguish between unfounded or dismissed or resolved "complaints/incidents" and those that resulted in some kind of adverse or disciplinary action.

56.     The Scorecard purports to award a point to an applicant that "has not been involved and is currently not involved in any business litigation."  (Exhibit 3, p. 3).

57.     The term "involved" is not defined and implicates an applicant who was a party to a lawsuit, or who was not a party but became "involved" by responding to a subpoena or testifying as a witness, or some other peripheral "involvement."

58.     Though "business litigation" is not defined in the Ordinance or related Resolutions, it may refer to lawsuits that qualify for jurisdiction in the business courts under MCL § 600.8035.

59.     This criterion discriminates against applicants who were involved or are involved in "business litigation" but not against those applicants who were involved in some other type of litigation.

60.     The filing of a lawsuit, in the nature of "business litigation" or otherwise, is "clearly protected activity under the First Amendment.*" Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010).

61.     There is no legitimate government interest in discriminating against applicants who were or are involved in "business litigation," particularly without

regard for the circumstances or outcome of the litigation or the applicant's alleged "involvement."

62.    The Scorecard purports to award a point if an applicant (or any of its owners) has not filed for bankruptcy in the last seven years.  (Exhibit 3, p. 2).

63.    This criterion does not make a distinction between filing for bankruptcy and obtaining a discharge in bankruptcy, voluntary or involuntary filing, or other circumstances surrounding an applicant's (or one of its owner's) decision to seek bankruptcy protection.

64.    11 U.S.C. § 525(a) provides that a governmental unit "may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such grant to, discriminate with respect to such grant against…a person that is or has been a debtor under this title…"

65.    The Scorecard purports to award a point to an applicant or owner that "ha[s] not had IRS liens placed upon any financial accounts or property."  (Exhibit 3, p. 2).

66.    This factor is inconsistent with the MRTMA and related administrative rule, which states that the CRA may consider "[w]hether the applicant has been served with a complaint or other notice filed with any public body regarding payment of any tax required under federal, state, or local law that has been delinquent for 1

or more years," (R 420.6(3)(b)), not whether an IRS lien was recorded at any time regardless of the circumstances or the current status of the lien.

*Capitalization Requirements*

67.    The Scorecard purports to award points to an applicant if it shows financial capitalization of at least $300,000.00, $500,000.00, or $1,000,000.00. (Exhibit 2, p. 2).

68.    The Medical Marihuana Facilities Licensing Act, Act 281 of 2016, MCL § 333.27101, *et seq*., ("MMFLA") and related administrative rules require that an applicant show a minimum amount of capitalization based on the type of facility applied for (R 420.11, Capitalization requirements; medical marihuana facilities licensing act). The largest capitalization requirement is for a Class-C grower requiring $500,000.00 in capitalization. There is no license type that requires $1,000,000.00 in capitalization under the MMFLA.

69.    R 420.4 sets for the "Application requirements; financial and criminal background," and specifies that only applicants seeking licensure under the MMFLA must provide financial statements and disclosures related to capitalization requirements (R 420.4(2)(a)(i-viii). Applicants seeking licensure under MRTMA must provide tax, W-2, and 1099 information, only. (R 420.4(b)(i-ii).

70.    The MRTMA and related administrative rules do not require an applicant to meet any capitalization requirements for State licensure.

14

***Property Ownership and Residency***

71.    The Scorecard awards points to an applicant if "[a]t least 1 owner owns the building where the recreational marijuana facility is located."  (Exhibit 3, p. 1).

72.    This criterion is problematic, in part, because it presupposes the current location of a recreational marijuana facility when the Township has not issued any licenses allowing the existence of any recreational marijuana facility.  No applicant can demonstrate that it *owns* "a building where the recreational marijuana facility **is** located." (emphasis added).

73.    The Application requires submission of an applicant's "***Michigan*** ID or Driver's license." (emphasis added).

74.    The Michigan Vehicle Code, Act 300 of 1949, MCL § 257.1, *et seq.*, requires proof of residency to obtain a Michigan driver's license (MCL § 257.307) with "resident" defined as a person "who resides in this state and establishes that he or she is legally present in the United States."  MCL § 257.51a.

75.    The Scorecard awards points to an applicant if "[a]t least 1 owner resides in a municipality that has been disproportionately impacted by marijuana prohibition and enforcement (as defined by the Marihuana Regulatory Agency[3]) and has so resided at least 5 of the last 10 years."  (Exhibit 3, p. 1).

---

[3] The CRA's "social equity program" provides for reduced fees for applicants who reside in certain "disproportionally impacted communities" and/or have marijuana convictions, not preferential treatment in granting licensure.

15

76.    This residency requirement amounts to economic protectionism in violation of the United States and Michigan State Constitutions.

### *Location of Facilities*

77.    The Scorecard purports to award a point for applicants located at least 500, 1,000, and 1,500 feet "from another medical or recreational marijuana facility." (Exhibit 3, p. 8).

78.    It is unclear how these criteria will be scored where (1) the Township forbids the existence of medical marijuana establishments, so any proposed facility necessarily will be more than 1,500 feet from any medical marijuana establishment, and (2) the Township has not granted licensure to any recreational facility so it is impossible to know where any recreational marijuana facility may exist, unless the Township is including facilities in bordering communities.

79.    The Zoning Ordinance prohibits any marijuana facility from being located within 500 feet from another marijuana facility.

80.    It is unclear how an applicant would know that its proposed location is within 500 feet of another marijuana establishment, or whether such an applicant would be denied the points in the Scorecard or have its application summarily denied based on the proximity of its proposed location to another facility.

81.    The Scorecard awards points to applicants who "provide a sidewalk/pathway along frontage of facility" between 500 and 1,500 feet (Exhibit 3, p. 9).

82.    1,500 feet is a little more than a quarter of a mile—it is highly unlikely that a marijuana retailer would have frontage of more than a quarter of a mile.

83.    This criterion is under the description "complete streets" and appears that the Township is soliciting applicants who are willing to construct sidewalks or roads for the Township in furtherance of its Master Plan, which has no relation to an applicant's ability to best operate a marijuana establishment.

84.    The Scorecard awards a point for applicants who can "[p]rovide 10% additional greenbelt landscaping," and additional points for 25% and 50% additional greenbelt landscaping.  (Exhibit 3, p. 8).

85.    The Ordinance and Resolutions do not define "greenbelt landscaping" or explain the percentages associated with the scoring criteria—it is unclear whether "25% additional greenbelt landscaping" is measured based on the available land at the applicant's location or as compared to other applicants, or some other basis.

*Plaintiffs' Application*

86.    Plaintiffs have worked in the Michigan cannabis industry since at least 2016 when the MMFLA was passed.

17

87.     Plaintiffs wish to own and operate an adult-use marijuana retailer store in the Township.

88.     Plaintiffs are at a distinct disadvantage in applying for licensure with the Township because of the unconstitutional, vague, and discriminatory criteria established by the Township.

89.     Plaintiffs are not honorably discharged military veterans, do not hold "advanced medical degrees," do not own real property in the Township, do not reside in one of the "social equity communities" identified by CRA, do not hold medical licenses or certifications, and have been involved in "business litigation" and have had an IRS lien recorded (and discharged) in the past.

90.     As a result, Plaintiffs are incapable of being awarded at least seven (7) of the seventy-nine points available.

91.     Plaintiffs cannot determine where their proposed facility should be located based on the distance requirements in the Zoning Ordinance, the Ordinance, and/or the Scorecard because they don't know where the other marijuana facilities *may* be located.

92.     Plaintiffs are unable to determine whether it is possible for it to earn points based on the location of its proposed facility, including for frontage pathways and greenbelt landscaping.

93.     Plaintiffs are unable to determine whether it is possible for them to earn nine (9) of the seventy-nine available points based on the proposed location of its facility.

94.     There are only two (2) licenses available for marijuana retail stores under the Ordinance, therefore it is all but guaranteed that the number of applications will far exceed the number of available licenses.

95.     Plaintiffs are unable to earn at least seven (7) points and are unable to determine whether it is possible for them to earn another nine (9) points; as a result, the highest score Plaintiffs can likely obtain is sixty-three (63), which is barely above the sixty-point minimum threshold and is certainly not competitive in any respect.

**<u>The Township's Licensing Scheme Violates the Michigan Constitution</u>**

96.     The Michigan Constitution provides that "[a]ll political power is inherent in the people.  Government is instituted for their equal benefit, security and protection."  Const. 1963, Art. 1, § 1.

97.     The Michigan Constitution further provides that "[n]o person shall be denied the equal protection of the laws," *Id.* at § 2, and that "[n]o person shall be…deprived of life, liberty or property, without due process of law."  *Id.* at § 17.

98.     The Michigan Constitution provides the right to interstate and intrastate travel, a right to pursue one's livelihood, and the right to be free from arbitrary or impermissible discrimination.

19

99.    The Ordinance and Resolutions violate these provisions because their preference for applicants who reside in specific communities for at least five of the past ten years punish Plaintiffs for exercising their rights to intrastate travel.

100.    The Ordinance and Resolutions violate these provisions because their preferences for applicants with "advanced medical degrees" or who hold commercial licenses or medical licenses and certifications punish Plaintiffs for pursuing their chosen livelihoods and draw a distinction between them and other applicants that is not rationally related to any legitimate government purpose.

101.    The Ordinance and Resolutions violate these provisions because their preference for applicants who have not been "involved in business litigation" punish Plaintiffs for exercising their rights to free speech guaranteed under the Michigan Constitution, Const. 1963, Art. 1, § 5.

## The Township's Licensing Scheme Violates the United States Constitution

102.    The First Amendment to the U.S. Constitution provides that Congress "shall make no law…abridging the freedom of speech…" U.S. Const. Amend. I.

103.    The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.

104.    The U.S. Constitution protects a person's "right to earn a livelihood by following the ordinary occupations of life," and provides the right to pursue the

20

lawful occupation of one's choosing.  See *Terrace v. Thompson*, 263 U.S. 197, 215, 44 S. Ct. 15, 18, 68 L. Ed. 255 (1923).

105.   The U.S. Constitution empowers the U.S. Congress "[t]o regulate Commerce…among the several States."  U.S. Const., Art. I, § 8, cl. 3.

106.   The U.S. Supreme Court has "long held that this Clause also prohibits state laws that unduly restrict interstate commerce," *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459, 204 L. Ed. 2d 801 (2019), and that a law that discriminates against interstate commerce is "virtually *per se* invalid…and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 812 (E.D. Mich. 2021) (citing *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38, 128 S.Ct. 1801, 170 L.Ed. 2d 685 (2008)).

107.   The Ordinance and Resolutions violate these provisions because their preference for applicants who have not been "involved in business litigation" punish Plaintiffs for exercising their rights to free speech.

108.   The Ordinance and Resolutions violate the Commerce Clause because they discriminate against out-of-state residents, punish people for moving between states, and punish people for having resided in certain communications within Michigan; these preferences do not advance a legitimate local purpose.

109.   The Ordinance and Resolutions violate these provisions because their preferences for applicants with "advanced medical degrees" or who hold commercial licenses or medical licenses and certifications punish Plaintiffs for pursuing their chosen livelihoods and draw a distinction between them and other applicants that is not rationally related to any legitimate government purpose.

**The Township's Licensing Scheme Violates MRTMA and Federal Law**

110.   The MRTMA and related administrative rules do not require that an applicant show a minimum amount of capitalization based on the type of facility applied for.

111.   The MRTMA only requires applicants to provide tax, W-2, and 1099 information.  (R 420.4(b)(i-ii)).

112.   The MRTMA and related administrative rules do not require an applicant to meet any capitalization requirements for State licensure.

113.   The MRTMA and related administrative rules state that the CRA may consider "[w]hether the applicant has been served with a complaint or other notice filed with any public body regarding payment of any tax required under federal, state, or local law that has been delinquent for 1 or more years."  (R 420.6(3)(b)).

114.   The Ordinance and Resolutions violate the MRTMA by requiring applicants to prove they meet certain capitalization requirements that are not part of

the MRTMA and are twice as much as the capitalization requirements under the MMFLA.

115.   The Ordinance and Resolutions violate the MRTMA by awarding a point to applicants who have not "had IRS liens placed upon any financial accounts or property," without regard for when the liens were placed, the circumstances of the lien, or whether the lien was discharged.

116.   11 U.S.C. § 525(a) provides that a governmental unit "may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such grant to, discriminate with respect to such grant against…a person that is or has been a debtor under this title…"

117.   The Ordinance and Resolutions violate this statute because their preference for applicants who have not sought bankruptcy protection punishes applicants who lawfully sought bankruptcy protection and/or obtained a discharge.

### The Township's Licensing Scheme is Unconstitutionally Vague

118.   An ordinance is unconstitutionally vague if it "confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed" or "its coverage is overbroad and impinges on First Amendment freedoms," *W. Bloomfield Charter Twp. v. Karchon*, 209 Mich. App. 43, 48–49, 530 N.W.2d 99, 102 (1995), or if "persons of ordinary intelligence must guess at its

meaning and differ as to its application." *J.L. Spoons, Inc. v. City of Brunswick*, 18 F. Supp. 2d 775, 781 (N.D. Ohio 1998).

119.   The Township's licensing scheme, including the Ordinance, Resolutions, and Application, are internally inconsistent and contradictory, and leave Plaintiffs and other applicants to guess as to how the applications will be scored.

120.   The Scorecard and Application are contradictory because the Scorecard awards a point for veteran status, but the Application expressly states that veteran status will NOT be considered when reviewing an application.

121.   The Ordinance states that medical marijuana facilities are prohibited in the Township, but the Application references medical marijuana facilities throughout, and the Scorecard awards points for applicants who have "advanced medical degrees" or medical licensure or certification.

122.   The Ordinance states that no marijuana facility may be located within 500 feet of another marijuana facility, giving the impression that proximity to another facility is sufficient to reject an application on its own, but the Scorecard simply awards a point for a facility that is at least 500 feet from another.

123.   The Scorecard awards a point if an owner has resided in certain "social equity" communities for five of the past ten years, but does not contain another explicit residency requirement; however, the Application requires submission of

24

Michigan ID or driver's licenses, thereby implying that applicants must be residents of Michigan.

124.  The Scorecard contains several undefined terms that make it impossible for Plaintiff and other applicants to determine whether they are eligible for points:

- Applicants are awarded a point if they hold an "advanced medical degree," which is undefined.

- Applicants are awarded a point if they have never been "involved" in "business litigation"; both "involved" and "business litigation" are undefined.

- The terms "owner" and "applicant" are used interchangeably throughout the Scorecard.  "Applicant" is defined in the Ordinance as "a person who applies for a Township operating license. With respect to disclosures in an application, or for purposes of eligibility for a Township license, the term applicant includes an officer, director, and managerial employee of the applicant and a person who holds any direct or indirect ownership interest in the applicant."  The term "owner" is not defined in the Ordinance or Scorecard.

- Applicants are awarded a point if they do not have a history of "federal, state, or local complaints/incidents."  "Incident" is not defined in the Ordinance or Scorecard.

- Applicants are awarded a point if they "describe a staffing plan" to "[e]mploy the chronically underemployed." "Chronically underemployed" is not defined.

125. As stated above, the Scorecard awards a point to applicants who have *not* been "involved in business litigation," which is discriminatory against applicants, such as Plaintiffs, who have exercised their First Amendment freedom to file suit.

## COUNT I
### Declaratory Judgment and Injunctive Relief
### (Violation of Michigan Constitution)

126. Plaintiffs incorporate the foregoing allegations, paragraph by paragraph, as if fully restated herein.

127. There is a case of actual controversy under 28 U.S.C. § 2201 because Plaintiffs contend that the Township's licensing scheme and process to score applications and award licenses to operate adult-use marijuana retail establishments violates the Equal Protection Clause, Due Process Clause, and Art. 1, § 5, of the Michigan Constitution, as stated herein.

WHEREFORE, Plaintiffs request that this Court:

A.    Enters declaratory judgement under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 that the Township's licensing scheme is invalid because it is unconstitutionally vague and its scoring criteria impermissibly favor

applicants who (a) have not exercised their First Amendment right to file lawsuits and (b) hold "advanced medical degrees" or other "commercial licenses" or "medical licenses and certifications."

B.    Order a speedy hearing pursuant to Fed. R. Civ. P. 57.

C.    Enjoin the Township from using unconstitutional criteria in evaluating and scoring applications and awarding licenses.

D.    Grant Plaintiffs such other and further relief as is consistent with equity and good conscience.

## COUNT II
### Declaratory Judgment and Injunctive Relief
### (Violation of U.S. Constitution)

128.    Plaintiffs incorporate the foregoing allegations, paragraph by paragraph, as if fully restated herein.

129.    There is a case of actual controversy under 28 U.S.C. § 2201 because Plaintiffs contend that the Township's licensing scheme and process to score applications and award licenses to operate adult-use marijuana retail establishments violates the Equal Protection Clause, Due Process Clause, Commerce Clause, and First Amendment, of the United States Constitution, as stated herein.

WHEREFORE, Plaintiffs request that this Court:

A.    Enters declaratory judgement under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 that the Township's licensing scheme is invalid because it is

unconstitutionally vague and its scoring criteria impermissibly favor applicants who (a) have not exercised their First Amendment right to file lawsuits and (b) hold "advanced medical degrees" or other "commercial licenses" or "medical licenses and certifications"; (c) reside in certain communities; and (d) are residents of Michigan.

B.    Order a speedy hearing pursuant to Fed. R. Civ. P. 57.

C.    Enjoin the Township from using unconstitutional criteria in evaluating and scoring applications and awarding licenses.

D.    Grant Plaintiffs such other and further relief as is consistent with equity and good conscience.

## COUNT III
### Declaratory Judgment and Injunctive Relief
### (Violation of MRTMA and 11 U.S.C. § 525)

130.    Plaintiffs incorporate the foregoing allegations, paragraph by paragraph, as if fully restated herein.

131.    There is a case of actual controversy under 28 U.S.C. § 2201 because Plaintiffs contend that the Township's licensing scheme and process to score applications and award licenses to operate adult-use marijuana retail establishments violates the MRTMA and 11 U.S.C. § 525, as stated herein.

WHEREFORE, Plaintiffs request that this Court:

A.   Enters declaratory judgement under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, that the Township's licensing scheme is invalid because it includes scoring criteria that are inconsistent with the MRTMA and impermissibly consider (a) capitalization requirements; (b) whether applicants have had IRS liens recorded against any property or account and (c) other criteria that have no rational bearing on an applicant's suitability to operate in compliance with the MRTMA.

B.   Order a speedy hearing pursuant to Fed. R. Civ. P. 57.

C.   Enjoin the Township from using criteria in evaluating and scoring applications and awarding licenses that violates the MRTMA.

D.   Grant Plaintiffs such other and further relief as is consistent with equity and good conscience.

Respectfully submitted,
JOELSON ROSENBERG, PLC

By: *Emily R. Warren*
Emily R. Warren (P76675)
Attorneys for Plaintiff
30665 Northwestern Hwy, Suite 200
Farmington Hills, MI 48334
(248) 855-2233
Dated: April 22, 2022          ewarren@jrlawplc.com

## <u>LIST OF EXHIBITS</u>

Exhibit 1:   Zoning Ordinance, No. 2022-01

Exhibit 2:   Ordinance, No. 2022-02

Exhibit 3:   Scorecard, Resolution No. 2022-09

Exhibit 4:   Resolution No. 2022-08

Exhibit 5:   Application

Exhibit 6:   Checklist

# **EXHIBIT 1**

**ORDINANCE NO. 2022-01**

**TOWNSHIP OF BIRCH RUN**

**SAGINAW COUNTY, MICHIGAN**

**ADOPTED:  February 8, 2022**

**PUBLICATION DATE: February 23, 2022**

**EFFECTIVE:  February 24, 2022**

An ordinance of the Township of Birch Run, Saginaw County, Michigan, to amend the Birch Run Township Zoning Ordinance; to ratify and confirm the remainder of the Birch Run Township Zoning Ordinance unless otherwise stated; to provide a procedure for conflicts with other laws;  to provide for sanctions; to provide that pending proceedings are not affected; to provide for severability; to repeal all Ordinances or parts of Ordinances in conflict herewith; to provide for an Effective Date; and to direct the publication of this Ordinance or a legally-permissible summary.

**THE TOWNSHIP OF BIRCH RUN**
**SAGINAW COUNTY, MICHIGAN**

**ORDAINS:**

**SECTION I**
**AMENDMENT TO BIRCH RUN TOWNSHIP ZONING ORDINANCE**

1.      The Birch Run Township Zoning Ordinance is amended to add "Marihuana Establishment operating under the Michigan Regulation and Taxation of Marihuana Act Initiated Law 1 of 2018, MCL 333.27951 *et seq*." as a use permitted with a Special Land Use Permit in a C-1 or C-2 Commercial Zoning District.  This shall be reflected in the applicable Table of Uses contained in the Birch Run Township Zoning Ordinance.

2.      The Birch Run Township Zoning Ordinance is further amended so as to list "Marihuana Establishment operating under the Michigan Regulation and Taxation of Marihuana Act Initiated Law 1 of 2018, MCL 333.27951 *et seq*." as a prohibited use in all zoning districts other than in a C-1 or C-2 Commercial Zoning District where it shall be permitted with the attainment of a Special Land Use Permit.

3.      The Birch Run Township Zoning Ordinance is further amended so as to state that the Township of Birch Run hereby prohibits all recreational marihuana establishments within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended, except for the following type(s) of recreational marihuana establishments, which are permitted within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended and pursuant to the regulations and constraints of the Township of Birch Run Prohibition of Certain Types and

Quantities of Recreational Marihuana Establishments Ordinance, the Birch Run Township Zoning Ordinance (as amended), and other applicable local and state law and regulations:

    a.   Marihuana retailer, as defined by MCL 333.27953 as amended. Marihuana retailer marihuana establishment is hereby permitted within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended, subject to all other applicable state and local laws and regulations including but not limited to the Birch Run Township Zoning Ordinance, as amended.  The number of Birch Run Township Marihuana licenses for a recreational Marihuana retailer establishment shall be limited to a total of two (2).

    b.   Marihuana secure transporter, as defined by MCL 333.27953 as amended. Marihuana secure transporter marihuana establishment is hereby permitted within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended, subject to all other applicable state and local laws and regulations including but not limited to the Birch Run Township Zoning Ordinance, as amended.  The number of Birch Run Township Marihuana licenses for a recreational Marihuana secure transporter establishment shall be limited to a total of four (4).

4.    Except otherwise stated herein, words used herein in regard to the use or proposed use of recreational marihuana shall have the definitions as provided for in Initiated Law 1 of 2018, MCL 333.27951, *et seq*., as may be amended.  The following words shall have the following specific definitions for purposes of this Ordinance:

    a.   "Applicant" means a person who applies for a Township operating license or Special Land Use Permit. With respect to disclosures in an application, or for purposes of eligibility for a Township license, the term applicant includes an officer, director, and managerial employee of the applicant and a person who holds any direct or indirect ownership interest in the applicant.

    b.   "Day care center" means a facility, other than a private residence, receiving 6 or more preschool or school age children for care for periods of less than 24 hours a day, and where the parents or guardians are not immediately available to the child. Day care center includes a facility which provides care for not less than 2 consecutive weeks, regardless of the number of hours of care per day. The facility is generally described as a child-care center, day care center, day nursery, nursery school, parent cooperative preschool, play group, or drop-in center.

    c.   "Marihuana establishment" shall mean a Marihuana Retailer or Marihuana Secure Transporter as defined Initiated Law 1 of 2018, MCL 333.27951, *et seq*., as may be amended.

    d.   "Person" means an individual, corporation, limited liability company,

partnership, limited partnership, limited liability partnership, limited liability limited partnership, trust, or other legal entity.

e.  "Recreational facility" means any public building or field used for the primary purpose of sports, leisure, or recreation.

f.  "School" means any public or private school meeting all requirements of the compulsory education laws of the state.

g.  "State operating license" or, unless the context requires a different meaning, "State License" means a license that is issued under the MRTMA that allows the licensee to operate as 1 of the following, specified in the license:

    i.  Marihuana Grower.
    ii.  Marihuana Processor.
    iii.  Marihuana Retailer.
    iv.  Marihuana Secure Transporter.
    v.  Marihuana Safety-Compliance Facility.
    vi.  Marihuana Microbusiness.

h.  "Township" means the Birch Run Township.

i.  "Township operating license" or, unless the context requires a different meaning, "Township License" means a license that is issued by the Township under this Ordinance that allows the licensee to operate as 1 of the following, specified in the license:

    i.  Marihuana Grower.
    ii.  Marihuana Processor.
    iii.  Marihuana Retailer.
    iv.  Marihuana Secure Transporter.
    v.  Marihuana Safety-Compliance Facility.
    vi.  Marihuana Microbusiness.

j.  "Township Licensee" means a person holding a valid Township operating license.

5.  The Birch Run Township Zoning Ordinance is further amended so as to state the following requirements regarding the attainment of a Special Land Use Permit:

a.  All Recreational Marihuana Facilities are subject to review and approval by the Birch Run Township Planning Commission in accordance with the Birch Run Township Zoning Ordinance.

b.  Any person or entity that wishes to operate a Marihuana Establishment in the Township shall obtain a Township License and must obtain a State Operating License prior to opening or operating.

c.  The Township shall assess an annual fee in the amount of $5,000.00 per application to defray the costs incurred by the Township for inspection, administration and enforcement costs associated with the operation of the Marihuana Establishment(s) operating in the Township.

d.  No License issued under this section shall be transferrable unless first approved by Birch Run Township and the State of Michigan.

e.  All Licenses issued under this section shall be renewed annually and subject to annual inspection and renewal fees as set from time to time by the Township by resolution.

f.  The Township may limit the number of Licenses issued under this section and may revise this limit from time to time.

g.  No person or entity that has opened or operated a facility doing business or purporting to do business under any state law, this Ordinance or the MRTMA without first obtaining a License shall be eligible for a License.

h.  A person or entity that receives a License under this Ordinance shall display its License and, when issued, its State Operating License in plain view clearly visible to Township officials and authorized agents of the State of Michigan.

i.  The Birch Run Township Board of Trustees shall be empowered to issue final approval or denial for any Application for a Recreational Marihuana Township Operating License.

j.  The Birch Run Township Planning Commission shall be empowered to issue final approval, denial, or approval with conditions for any Application for a Township Special Land Use Permit where the property that is the subject of the Special Land Use Permit Application will be used in whole or in part for any purpose relating to Recreational Marihuana.

6.      The Birch Run Township Zoning Ordinance is further amended so as to state the following requirements regarding the location of a marihuana establishment located in Birch Run Township:

  a. All Marihuana Establishments must be located in a C-1 or C-2 Commercial Zoning District.

  b. No Marihuana Establishment shall be located within 1,000 feet from a school, day care center, recreational facility, church, public or private park. The minimum required distance of 1,000 feet shall be measured as the shortest distance between the principal building unit that is occupied by the regulated use to the nearest property line of the protected use. For purposes of this ordinance "School" means any public or private school meeting all requirements of the compulsory education laws of the state.

  c. No Marihuana Establishment shall be located within 500 feet from another Marihuana Establishment. The minimum required distance of 500 feet shall be measured as the shortest distance between the principal building unit that is occupied by the regulated use to the nearest property line of the protected use.

  d. The Applicant location shall meet all applicable written and duly promulgated standards of the Township and, prior to opening, shall demonstrate to the Township that it meets the rules and regulations promulgated by the State of Michigan.

  e. The Applicant's location shall conform to all standards of the zoning district in which it is located.

  f. No person shall reside or permit any person to reside in or on the premises of a recreational marihuana facility.

7.      The Birch Run Township Zoning Ordinance is further amended so as to state the following requirements regarding the operation of a marihuana establishment located in Birch Run Township:

  a. A Recreational Marihuana Establishment operating in the Township shall at all times comply with the operational requirements described herein, which the Township may review and amend from time to time as it determines reasonable.

b.  Scope of Operation. Recreational Marihuana Establishments shall comply with all respective codes of the local zoning, building, and health departments. The Marihuana Establishment must hold a valid License and State Operating License for the type of Recreational Marihuana Establishment intended to be carried out on the property. All Recreational Marihuana Establishments shall comply with all applicable state laws.

c.  Security. License Holders shall at all times maintain a security system that includes the following:
    i.  Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the property.
    ii. Robbery and burglary alarm systems which are monitored and operated 24 hours per day.

d.  All Recreational Marihuana in whatever form stored at the property shall be kept in a secure manner and shall not be visible from outside the property.

e.  Operating Hours. No Recreational Marihuana Establishment shall operate between the hours of 9:00 p.m. and 9:00 a.m. on any Monday, Tuesday, Wednesday, Thursday, Friday, or Saturday.  No retailer shall operate between the hours of 9:00 p.m. and 11:00 a.m. on any Sunday.

f.  Sign Restrictions. It shall be prohibited for any Recreational Marihuana Establishment to display any signs that are inconsistent with local laws, regulations, or any other applicable laws. No pictures, photographs, drawings or other depictions of Recreational Marihuana shall appear on the outside of any property nor be visible outside the property. The words "Marihuana," "Cannabis" and any other words used or intended to convey the presence or availability of Marihuana shall not appear on the outside of the Licensed Premises nor be visible outside of the Licensed Premises on the property.

g.  Use of Marihuana. The sale, consumption or use of alcohol or tobacco products on the Licensed Premises is prohibited. Smoking or consumption of controlled substances, including Recreational Marihuana, on the Licensed Premises is prohibited.

h. Disposal. The disposal of Recreational Marihuana shall be accomplished in a manner that prevents its acquisition by any person who may not lawfully possess it.

i. All Recreational Marihuana delivered to a customer shall be packaged and labeled as provided by applicable laws and Ordinances.

j. Additional Conditions. The Planning Commission may impose such reasonable terms and conditions on a Recreational Marihuana Establishment's special use as may be necessary to protect the public health, safety, and welfare, and to obtain compliance with the requirements of this Ordinance and applicable law.

8. The Birch Run Township Zoning Ordinance is further amended so as to state the following requirements regarding the application of a marihuana establishment located in Birch Run Township:

a. An Application for a License for a Recreational Marihuana Establishment and/or a Special Land Use Permit for a Recreational Marihuana Establishment shall be submitted to the Township Clerk, and shall contain the following information:

i. The name, address, and phone number of the proposed Applicant and the proposed Marihuana Establishment.

ii. The names, addresses, and phone numbers for all owners, directors, officers, and managers of the Applicant and the Marihuana Establishment.

iii. If the disclosed entity is a trust, the application shall disclose the names and addresses of the beneficiaries; if a corporation, the names and addresses of all shareholders, officers, and directors; if a partnership or limited liability partnership, the names and addresses of all partners; if a limited partnership or limited liability limited partnership, the names of all partners, both general and limited; or if a limited liability company, the names and addresses of all members and managers.

iv. The appropriate non-refundable application fee and the nonrefundable licensing fee in the amount determined by the Township.

v. The address of the proposed Recreational Marihuana Establishment, proof of ownership of the proposed location where the Recreational Marihuana Establishment is to be operated or a copy of the lease for the premises or a copy of a fully-executed

Purchase Agreement listing the Applicant as the buyer of the proposed location where the Recreational Marihuana Establishment is to be operated, indicating use of the premises in a manner requiring licensure under this Ordinance, and any additional contact information deemed necessary and requested by the Township.

vi. Proof of an adequate premise liability and casualty insurance policy in a minimum amount to be determined by the Township Board. This minimum amount may be adjusted from time to time as the Township Board finds appropriate.

vii. Any other information required by the MRTMA or this Ordinance or deemed by the Township to be required for consideration of a License.

viii. The Township Board and/or Township Planning Commission shall not consider an incomplete application but shall, within a reasonable time, return the application to the applicant with notification of the deficiency and instructions for submitting a corrected application.

b. Renewal. The same requirements that apply to all new Applications for a License apply to all renewal applications. Renewal applications shall require Township approval and shall be submitted to and received by the Clerk prior to expiration of the License.

c. Upon approval of a Special Use Permit for any Establishment contemplated herein, the Planning Commission shall transmit their action to the Township Board. The Township Board shall, upon receipt of a complete Operating License Application and approval by the Planning Commission along with all required fees, approve or deny the Operating License Application within one-hundred-twenty (120) days of receipt of the complete License Application and approval by the Planning Commission along with all required fees, or within one-hundred-fifty (150) days if the location of the Licensed Premises is proposed to be amended. The processing time may be extended upon written notice by the Township for good cause, and any failure to meet the required processing time shall not result in the automatic granting of the Operating License. Any denial must be in writing and must state the reason(s) for denial. Any final denial of an Operating License may be appealed to a court of competent jurisdiction; provided that, the pendency of an appeal shall not stay or extend the expiration of any Operating License. The Township has no obligation to process or approve any incomplete SLUP

Application or Operating License Application, and any times provided under this Ordinance shall not begin to run until the Township receives a complete SLUP Application/Operating License Application, as determined by the Township Board. A determination of a complete SLUP Application/Operating License Application shall not prohibit the Township from requiring supplemental information.

d.   The Birch Run Township Board of Trustees shall be empowered to issue final approval or denial for any Application for a Recreational Marihuana Township Operating License.

e.   The Birch Run Township Planning Commission shall be empowered to issue final approval, denial, or approval with conditions for any Application for a Township Special Land Use Permit where the property that is the subject of the Special Land Use Permit Application will be used in whole or in part for any purpose relating to Recreational Marihuana.

## SECTION II
## RATIFICATION AND CONFIRMATION OF REMAINDER OF BIRCH RUN TOWNSHIP ZONING ORDINANCE

Except as otherwise stated herein, the remainder of the Birch Run Township Zoning Ordinance is hereby confirmed and ratified.

## SECTION III
## CONFLICTS WITH OTHER LAWS OR REGULATIONS

If any provision of this Ordinance differs from a provision of any other applicable law, ordinance, rule, or regulation, both the provision of this Ordinance and the differing provision shall apply if possible. If the two (2) provisions are in conflict, then the provision establishing the higher or stricter standard shall apply.

## SECTION IV
## PENDING PROCEEDINGS NOT AFFECTED.

Nothing in this ordinance shall be construed to affect any suit or proceeding impending in any court, or any rights acquired, or liability incurred, or any cause or causes of action acquired or existing, under any act or ordinance hereby repealed; nor shall any just or legal right or remedy of any character be lost, impaired or affected by this ordinance.

## SECTION V
## SEVERABILITY

Should any section, clause or provision of this Ordinance be declared to be invalid by a court of competent jurisdiction, the same shall not affect the validity of the Ordinance as a whole

or any other part thereof other than the parts so declared to be invalid. The Birch Run Township Board of Trustees hereby declares that it would have enacted this Ordinance even without whatever provision may be declared invalid by a court of competent jurisdiction.

## SECTION VI
## REPEAL OF CONFLICTING ORDINANCES

All Ordinances or parts of Ordinances in conflict herewith are hereby repealed.

## SECTION VII
## EFFECTIVE DATE

This Ordinance and the rules, regulations, provisions, requirements, orders, and matters established and adopted hereby shall take effect on February 24, 2022, following publication as required by law following adoption by the Township Board.

## SECTION VIII
## TOWNSHIP PUBLICATION

The Township Clerk is hereby ordered and directed to cause a Notice of Ordinance adoption to be published in a newspaper of general circulation within Birch Run Township.

This Ordinance is hereby declared to have been adopted by the Birch Run Township Board of Trustees, County of Saginaw, State of Michigan, at a regular meeting held on the 8th day of February 2022 and ordered to be given publication in the manner prescribed by law.


_____
Ray Letterman, Supervisor


_____
Riley Kiessling, Clerk

Date of Publication: February 23, 2022.

Newspaper: Birch Run/Bridgeport Herald

***The Township Clerk's Certification is contained on the following page***
***The balance of this page is intentionally left blank***

<u>CERTIFICATION</u>

ADOPTED

YEAS: R. Letterman, C. Trinklein, K. Parlberg, D. Trinklein, K. Kiessling, C. Watts, F. Sheridan

NAYS: None

ABSENT: None

State of Michigan, County of Saginaw,

I the undersigned Township Clerk for the Township of Birch Run, Saginaw County, Michigan, certify that the above Ordinance No. 2022-01, adopted by the Township Board of Trustees of the Township of Birch Run on the 8th day of February 2022, and was recorded in full in the Minutes of the Meeting of the Township Board of Trustees on said date.  It was signed by the Supervisor and Clerk of the Township.

Dated: February 8, 2022

_____
Riley Kiessling, Clerk

***The balance of this page is intentionally left blank***

# **EXHIBIT 2**

TOWNSHIP OF BIRCH RUN

COUNTY OF SAGINAW, STATE OF MICHIGAN

ORDINANCE NO.  2022-02

ADOPTED: February 8, 2022

PUBLISHED: February 23, 2022

EFFECTIVE: March 25, 2022

### BIRCH RUN TOWNSHIP PROHIBITION OF CERTAIN TYPES AND QUANTITIES OF RECREATIONAL MARIHUANA ESTABLISHMENTS POLICE-POWER ORDINANCE

The Township of Birch Run hereby Ordains the following: To provide an intent and purpose for this Ordinance; to provide a title for the ordinance; to define words; to prohibit certain types and/or quantities of recreational marihuana establishments within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, *et seq*., as may be amended; to require an operating license; to prescribe fees; to provide a procedure for the granting of adult-use/recreational marihuana licenses; to provide a procedure for license renewal; to provide location requirements; to provide operational requirements; to provide a procedure for revocation; to provide penalties for violation of this ordinance; to provide for severability; to repeal all ordinances or parts of ordinances in conflict herewith; and to provide an effective date.

TOWNSHIP OF BIRCH RUN
SAGINAW COUNTY, MICHIGAN

THE TOWNSHIP OF BIRCH RUN ORDAINS:

## I.        Section I. Purpose and Intent.

1.        This ordinance is adopted for the purpose of  promulgating Township rules, requirements, and regulations for Recreational/Adult-Use Marihuana Facilities in a manner that promotes and protects the public health, safety and welfare, mitigates potential impacts on surrounding properties and persons, and that conforms with the policies and requirements of the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq*., as amended (hereinafter "MRTMA") (as well as other applicable law) and the State Administrative Rules, as amended, adopted pursuant to the MRTMA. In the event of any conflict between any provision of this Ordinance and state law, state law shall be controlling regarding any entirely conflicted provision(s) of this Ordinance.

2.        It is also the intent of this ordinance to help defray administrative and enforcement costs associated with the operation of a Marihuana facility in the Township through imposition of an annual, nonrefundable fee of not more than $5,000.00 on each recreational Marihuana facility licensee. Authority for the enactment of these provisions is set forth in the MRTMA.

3.        Nothing in this ordinance is intended to grant immunity from criminal or civil prosecution, penalty, or sanction for the cultivation, manufacture, possession, use, sale, or distribution of Marihuana, in any form, that is not in compliance with the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq*; the Marihuana Tracking Act, MCL

333.27901 *et seq*.; and/or all other applicable rules promulgated by the state of Michigan.

       4.       As of the effective date of this ordinance, Marihuana remains classified as a Schedule 1 controlled substance under the Federal Controlled Substances Act, 21 U.S.C. Sec. 801 *et seq*., which makes it unlawful to manufacture distribute, or dispense Marihuana, or possess Marihuana with intent to manufacture, distribute, or dispense Marihuana. Nothing in this ordinance is intended to grant immunity from any criminal prosecution under federal law(s).

    **II.**       **Section II. Name.**  This ordinance shall be known as and may be cited as the Township of Birch Run Prohibition of Certain Types and Quantities of Recreational Marihuana Establishments Police-Power Ordinance.

    **III.**      **Section III. Definitions.**  Except otherwise stated herein, words used herein shall have the definitions as provided for in Initiated Law 1 of 2018, MCL 333.27951, *et seq*., as may be amended.  The following words shall have the following specific definitions for purposes of this Ordinance:

       1.       "Applicant" means a person who applies for a Township operating license. With respect to disclosures in an application, or for purposes of eligibility for a Township license, the term applicant includes an officer, director, and managerial employee of the applicant and a person who holds any direct or indirect ownership interest in the applicant.

       2.       "Day care center" means a facility, other than a private residence, receiving 6 or more preschool or school age children for care for periods of less than 24 hours a day, and where the parents or guardians are not immediately available to the child. Day care center includes a facility which provides care for not less than 2 consecutive weeks, regardless of the number of hours of care per day. The facility is generally described as a child-care center, day care center, day nursery, nursery school, parent cooperative preschool, play group, or drop-in center.

       3.       "Person" means an individual, corporation, limited liability company, partnership, limited partnership, limited liability partnership, limited liability limited partnership, trust, or other legal entity.

       4.       "Recreational facility" means any public building or field used for the primary purpose of sports, leisure, or recreation.

       5.       "School" means any public or private school meeting all requirements of the compulsory education laws of the state.

       6.       "State operating license" or, unless the context requires a different meaning, "State License" means a license that is issued under the MRTMA that allows the licensee to operate as 1 of the following, specified in the license:

            a.     Marihuana Grower.

            b.     Marihuana Processor.

            c.     Marihuana Retailer.

            d.     Marihuana Secure Transporter.

            e.     Marihuana Safety-Compliance Facility.

            f.     Marihuana Microbusiness.

7.      "Township" means the Birch Run Township.

8.      "Township operating license" or, unless the context requires a different meaning, "Township License" means a license that is issued by the Township under this Ordinance that allows the licensee to operate as 1 of the following, specified in the license:

      a.      Marihuana Grower.

      b.      Marihuana Processor.

      c.      Marihuana Retailer.

      d.      Marihuana Secure Transporter.

      e.      Marihuana Safety-Compliance Facility.

      f.      Marihuana Microbusiness.

9.      "Township Licensee" means a person holding a valid Township operating license.

**IV.      Section IV. Certain Marihuana Establishments and Quantities thereof Prohibited.**   The Township of Birch Run hereby prohibits all recreational marihuana establishments within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended, except for the following type(s) of recreational marihuana establishments, which are permitted within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended and pursuant to the regulations and constraints of this Ordinance, the Birch Run Township Zoning Ordinance, and other applicable local and state law and regulations:

1.      Marihuana retailer, as defined by MCL 333.27953 as amended.  Marihuana retailer marihuana establishment is hereby permitted within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended, subject to all other applicable state and local laws and regulations including but not limited to the Birch Run Township Zoning Ordinance, as amended.  The number of Birch Run Township Marihuana permits/licenses for a recreational Marihuana retailer establishment shall be limited to a total of two (2).

2.      Marihuana secure transporter, as defined by MCL 333.27953 as amended. Marihuana secure transporter marihuana establishment is hereby permitted within the boundaries of the Township of Birch Run pursuant to Initiated Law 1 of 2018, MCL 333.27951, et *seq*., as may be amended, subject to all other applicable state and local laws and regulations including but not limited to the Birch Run Township Zoning Ordinance, as amended.  The number of Birch Run Township Marihuana permits/licenses for a recreational Marihuana secure transporter establishment shall be limited to a total of four (4).

**V.      Section V.  License Required.**   A person shall not engage in the business or occupation of a Marihuana Facility within the Township without first obtaining: (1) A State operating license for the Marihuana Facility, and (2) A Township operating license issued by the Township pursuant to the requirements and procedures set forth in this ordinance and other applicable Township law and regulations.

**VI.      Section VI. Fees.**   An application fee in the amount of $5,000 must be paid at the time of filing an application for a Township operating license to defray the administrative costs of

3

processing and reviewing an application. Except as expressly provided by this Ordinance, application fees are non-refundable. In the event an application is referred for a consultant review, the applicant shall pay all consultant review fees. Upon approval or renewal of a Township operating license, the Township Licensee shall pay to the Township an annual nonrefundable operating fee in the amount of $5,000 or as may be otherwise established by the Township Board, to help defray Township costs associated with the operation of a Marihuana Facility within the Township.

**VII.**     **Section VII. Requirements and Procedure for Granting Adult-Use/Recreational Marihuana Licenses.**

1.      Any Person who desires to obtain an Adult-Use/Recreational Marihuana License to operate a Recreational-Marihuana Establishment within the Township of Birch Run shall submit an Application to the Township on an Application form to be provided by the Township Board. The Applicant shall also submit all other documentation requested by the Township to support the application.  The Applicant's application and supporting documentation shall be reviewed and scored by the Township, or the Township's designee.  The scoring criteria shall be developed and promulgated by the Township.  No Person may be awarded an Adult-Use/Recreational Marihuana License to operate a Recreational-Marihuana Establishment within the Township of Birch Run unless that person attains a minimum score of at least 60 following the reviewing and scoring of the Applicant's application.   In the event that the number of applicants for a given Adult-Use/Recreational-Marihuana License exceeds the number of available licenses, the license(s) will be awarded to the Person(s) who submitted the highest-scoring application(s), subject to the minimum-scoring requirements.  Prior to submitting an Application to the Township for an Adult-Use/Recreational Marihuana License to operate a Recreational-Marihuana Establishment within the Township of Birch Run, an Applicant must have obtained and present proof of pre-approval of a State Recreational Marihuana Operating License from the State of Michigan.

2.      Application for a Township Operating License shall be made to the Township Clerk upon Township application forms for a Township Operating License and signed by the applicant verifying:

        a.   The truth and accuracy of all information and representations in the application, and;

        b.   The Applicant's legal authority to make application for the proposed Marihuana Facility at the proposed location. Applications including information and documentation provided pursuant to an application shall be subject to the disclosure provisions under the MRTMA or other applicable law or regulations. In addition to information and submittals required by this ordinance, the application shall include payment of an application fee in the amount of $5,000.

3.      Operating Requirements.  Any land use, site plan or other zoning approval of a Marihuana Facility granted under any provision of this Ordinance or the Township's Zoning Ordinance shall be deemed conditional upon the timely approval and issuance of both a State and Township Marihuana Facility Operating License.  Revocation or denial of a required Marihuana Facility Operating License shall render any approval of a Marihuana Facility granted under any provision of the zoning ordinance null and void.

4.      Approved Site Plan Required. Use of any property or structure as a Marihuana Facility requires Site Plan Review and approval of a site plan by the Planning Commission

pursuant to the Birch Run Township Zoning Ordinance. Marihuana Facilities shall be operated and maintained in compliance with the approved site plan for the facility. Any use of property or a structure without, or in violation of, an approved site plan shall constitute a violation of the zoning ordinance and a nuisance per se subject to abatement by a court of competent jurisdiction.

5.      Site Plan Application and Review Criteria. A site plan and site plan approval application for a Marihuana Facility shall comply with the Birch Run Township Zoning Ordinance. A site plan application for a Marihuana Facility shall be processed in accordance with the Planning Commission Review procedures prescribed by the Birch Run Township Zoning Ordinance. In addition to the criteria set forth in the Birch Run Township Zoning Ordinance, the following shall apply to a site plan/application for a Marihuana Facility:

   a.  Identification of the type of Marihuana Facility applied for (e.g., retailer, secure transporter) and a detailed description of all services, products, items, uses, operations, or merchandise produced, sold, offered, conducted or provided by the proposed Marihuana Facility.

   b.  Marihuana Facility uses, operations and activities shall comply with all rules and operating regulations adopted pursuant to the MRTMA and other applicable law. A description of an operating plan for the proposed Marihuana Facility shall be provided including the following:

      i.   A description of the products and services to be provided by the Marihuana Facility, including retail sales of food and/or beverages, if any, and any related accommodations or facilities.

      ii.  A floor plan, drawn to scale, showing the layout of the Marihuana Facility and the principal uses of the floor area depicted therein, including a detailed depiction of where any uses other than Marihuana related uses are proposed to occur on the premises.

      iii. A detailed description of all Marihuana storage facilities and equipment including enclosed, locked facilities, if any, as may be required by the MRTMA or other applicable law. Storage of Marihuana shall comply with applicable rules adopted pursuant to the MRTMA and other applicable law.

   c.  A description of waste disposal procedures, methods and facilities for Marihuana waste products including, but not limited to, usable and non-usable Marihuana. Waste product disposal and storage shall comply with applicable rules adopted pursuant to the MRTMA and other applicable law.

   d.  A description of any proposed signs including a detailed depiction of sign language or displays, dimensions, locations, quantity, configuration, and illumination. Signs shall comply with applicable provisions of the Township's Sign Ordinance and any marketing /advertising restrictions for Marihuana products and facilities adopted pursuant to the MRTMA and other applicable law.

5

e.  Signed and dated verification by the property owner, or his/her duly authorized agent, of the premises where the proposed Marihuana Facility will be located certifying that the property owner has been provided with and reviewed a complete copy of the application and consents to use and occupancy of the premises as a Marihuana Facility as described and referenced in the application. A detailed description of the proposed security plan for the facility including identification of all proposed security measures, equipment, and devises. A security plan shall comply with rules and security regulations adopted pursuant to the MRTMA and other applicable law. Security plans require review and approval by the Township Code Enforcement Officer (or such other individual as the Township Board may designate from time to time). The Township Code Enforcement Officer may require review and recommendation of a proposed security plan by an independent consultant with credentialed expertise in the field of site/facility security measures. The cost of an independent review by an independent security consultant shall be paid entirely by the applicant.

f.  A Marihuana Establishment shall not be located less than one-thousand (1,000) feet from a school, day care center, recreational facility, church, public or private park.  The minimum required distance of 1,000 feet shall be measured as the shortest distance between the principal building unit that is occupied by the regulated use to the nearest property line of the protected use. For purposes of this ordinance "School" means any public or private school meeting all requirements of the compulsory education laws of the state.

g.  A Marihuana Establishment shall not be located less than five-hundred (500) feet from another Marihuana Establishment. The minimum required distance of 500 feet shall be measured as the shortest distance between the principal building unit that is occupied by the regulated use to the nearest property line of the protected use.

h.  Unless otherwise authorized pursuant to any rules adopted pursuant to the MRTMA and other applicable law, all facility operations, transactions, and activities shall be conducted within an enclosed structure. Other than waste disposal, outdoor storage is prohibited.

i.  An area map, drawn to scale, shall be provided indicating, within a radius of one-thousand feet (1,000 ft.) from the boundaries of the proposed site, the proximity of the site to any school, day-care center, recreational facility, church, public or private park.

j.  An area map, drawn to scale, shall be provided indicating, within a radius of five-hundred feet (500 ft.) from the boundaries of the proposed site, the proximity of the site to any existing marihuana site.

6.      Action by Planning Commission. The Planning Commission shall review the proposed application for a recreational Marihuana facility, together with any reports and recommendations from staff, the Township Department heads, the Township Planner, Township Attorney, other Township consultants, and any public comments. The Planning

Commission shall identify and evaluate all relevant factors and shall report its findings and recommendation in writing to the Township Board.

7.      The Township Board shall then make a determination based on the requirements of this Ordinance and the Township Zoning Ordinance, including the Township's Standards for Special Use Approval, as codified in the Township's Zoning Ordinance. The Township Board is authorized to table, approve, approve subject to conditions or deny the special use as outlined in the Township's Zoning Ordinance.

8.      In the event that the number of Applications for a given license type exceeds the number of available licenses, then the license(s) shall be awarded pursuant to a merit-based criteria system. The Township Board shall adopt and approve by Resolution Scoring Criteria that will be used by the Township to review and score Recreational Marihuana Establishment Applications. The Recreational Marihuana Establishment Applications shall be scored by the Birch Run Township Recreational Marihuana Sub-Committee ("the Sub-Committee"), which shall be created and established by the Township Board by Resolution. Following review and scoring, the Sub-Committee shall transmit its findings and report to the Birch Run Township Board for final approval or denial of any Birch Run Township Recreational Marihuana Operating License. A quorum of the Sub-Committee shall be constituted of one (or more) member of the Township Board and one (or more) member of the Township Planning Commission, and at least one additional person if only one member of the Township Board and one member of the Township Planning Commission are present.

9.      An application for site plan approval of a Marihuana Facility that is materially incomplete or would result in a violation of state or local law shall be denied. Approval of a site plan for a Marihuana Facility does not guarantee, represent, or imply approval of a Marihuana Facility Operating License or any other permit, license or local approval that may be required by Township codes or ordinances for the proposed facility.

10.     The Birch Run Township Board of Trustees shall be empowered to issue final approval or denial for any Application for a Recreational Marihuana Township Operating License.

11.     The Birch Run Township Planning Commission shall be empowered to issue final approval, denial, or approval with conditions for any Application for a Township Special Land Use Permit where the property that is the subject of the Special Land Use Permit Application will be used in whole or in part for any purpose relating to Recreational Marihuana.

VIII.       **Section VIII.  License Renewal.**

1.      A Township operating license expires one (1) year after issuance or renewal.

2.      A Township operating license may he renewed if:

        a.    The Township Licensee submits a written request for renewal to the Township on forms prescribed by the Township on or prior to expiration and pays the yearly operating fee of $5,000.

        b.    The Township Supervisor, or his/her designee, verifies that at or immediately prior to expiration, the information, conditions, and

7

representations contained in the original approved application remain materially correct, true and accurate.

c. The State operating license for the Marihuana Facility has not been suspended or revoked.

d. The Marihuana Facility passes inspection and is in compliance with all applicable laws, local building codes, ordinances and zoning regulations.

e. The Township Licensee must apply for and receive a local Birch Run Township Business License.

3.    If a renewal application is not submitted on or before the expiration date, the Township operating license may be renewed within 60 days after expiration upon application and payment of the renewal application fee. If the Township operating license is renewed within 60 days after expiration, the Township Licensee may continue to operate under the expired Township operating license during the 60 days following expiration.

4.    An approved renewal of a Township operating license shall be held in escrow by the Township until the Applicant provides, or the Township receives, written verification that the Township Licensee has obtained:

a. A valid renewal of a State operating license for a Marihuana Facility authorized by the Township operating license including identification of the true party in interest named as the State Licensee, and;

b. Payment of the annual operating fee, and;

c. The Marihuana Facility passes all required inspections. In the event the Township Licensee fails to provide verification of the above requirements within 60 days of notification of approval of a renewed Township operating license, the renewal of the Township operating license shall be deemed canceled unless the Township extends the time for providing verification of the above requirements upon a showing of good cause. Upon obtaining timely verification of the above requirements and receipt of the Township Licensee's annual operating fee, the Township shall deliver the renewed Township operating license to the Township Licensee. An approved renewal of a Township operating license shall not be valid until delivered to the Township Licensee by the Township and the Township Licensee pays all required fees.

**IX.    Section IX.  Location Requirements.**    No person shall reside or permit any person to reside in or on the premises of a recreational marihuana facility.  All Recreational/Adult-Use Marihuana Facilities/Establishments located in the Township of Birch Run shall fully comply with the Township of Birch Run Zoning Ordinance.

**X.    Section X.  Operational Requirements.**

1.    No permit or license issued under this Ordinance shall be transferrable unless

8

first approved by the State of Michigan and the Township Board.

2.      A person or entity who/which receives a permit/license under this Ordinance shall display its permit and, when issued, its State Operating License in plain view clearly visible to Township Officials and State Marihuana Licensing Board authorized agents.

3.      Permit/License Holders shall at all times maintain a security system that includes the following:

a.   Security surveillance cameras installed to monitor all entrances, along with the interior and exterior of the property.

b.   Robbery and Burglary alarm systems, which are monitored 24 hours per day.

c.   All recreational marihuana in any form whatsoever stored at the property shall be kept in a secure manner and shall not be visible from the outside of the property.

4.   The sale, consumption or use of alcohol or tobacco products on the permitted/licensed premises is prohibited.

5.   No Recreational Marihuana Establishment shall operate between the hours of 9:00 p.m. and 9:00 a.m. on any Monday, Tuesday, Wednesday, Thursday, Friday, or Saturday.  No retailer shall operate between the hours of 9:00 p.m. and 11:00 a.m. on any Sunday.

XI.      **Section XI.  Revocation.** A permit/license issued under this section may be revoked for any of the following non-exhaustive list of reasons:

1.      Fraud or misrepresentation contained in the permit/license application.

2.      Any known violation of this Ordinance or other Township Ordinance(s) or regulations.

3.      Loss of the Applicant's State of Michigan Operating License.

4.      Conducting business in an unlawful manner, or, in such a way as to constitute a menace to the health, safety or general welfare of the public or community.

XII.      **Section XII. Violations and Penalties.**

1.      Any person who disobeys, violates, neglects or refuses to comply with any provision of this ordinance or who causes, allows or consents to any of the same shall be deemed to be responsible for the violation of this ordinance.  A violation of this ordinance is deemed to be a nuisance per se.

2.      A violation of this ordinance is a municipal civil infraction, for which the fines shall be not more than $500, in the discretion of the Court. The foregoing sanctions shall be in addition to the rights of the Township of Birch Run to proceed at law or equity with other appropriate and proper remedies. Additionally, the violator shall pay the Township of Birch Run's costs which may

9

include all expenses, direct and indirect which the Township of Birch Run incurs in connection with the municipal civil infraction, including but not limited to the attorney fee incurred by the Township of Birch Run in connection with the municipal civil infraction.

      3.     Each day during which any violation of this Ordinance continues shall be deemed a separate offense.

      4.     In addition, the Township of Birch Run may seek injunctive relief against a person or persons alleged to be in violation of this Ordinance, and such other relief as may be provided by law.

      5.     This Ordinance shall be administered and enforced by the Township Supervisor, Township Code-Enforcement Officer, or by such other person(s) as designated by the Township Board from time to time.

**XIII.**     **Section XIII. Prohibition of Medical Marihuana Establishments.** Nothing herein shall be deemed to permit medical-marihuana establishments established pursuant to the Medical Marihuana Facilities Licensing Act, MCL 333.27101 *et seq*., as all such medical-marihuana establishments are prohibited in Birch Run Township.

**XIV.**     **Section XIV. Severability.** The provisions of this ordinance are hereby declared to be severable. If any clause, sentence, word, section or provision is hereafter declared void or unenforceable for any reason by a court of competent jurisdiction, it shall not affect the remainder of such ordinance which shall continue in full force and effect.

**XV.**     **Section XV. Repeal.** All ordinance or parts of ordinances in conflict herewith are hereby repealed.

**XVI.**     **Section XVI. Effective Date.** This Ordinance and the rules, regulations, provisions, requirements, orders, and matters established and adopted hereby shall take effect after the expiration of 30 days following publication as required by law following adoption by the Township Board.

**XVII.**     **Section XVII. Publication.** The Township Clerk is hereby ordered and directed to cause this Ordinance to be published, either in full or in the form of a legally-permitted summary, in a newspaper of general circulation within Birch Run Township.

Made and passed by the Birch Run Township Board of Trustees this 8th day of February 2022.

_____

RAY LETTERMAN
TOWNSHIP OF BIRCH RUN SUPERVISOR


_____

RILEY KIESSLING
TOWNSHIP OF BIRCH RUN CLERK

***The certification of the Township Clerk is contained on the following page****
***The balance of this page is intentionally left blank****

10

CERTIFICATION

YEAS: R. Letterman, C. Trinklein, K. Parlberg, D. Trinklein, K. Kiessling, C. Watts, F. Sheridan

NAYS: None

ABSENT: None

ORDINANCE DECLARED ADOPTED

STATE OF MICHIGAN)
COUNTY OF SAGINAW)

I, the undersigned, Township Clerk for the Township of Birch Run, Saginaw County, Michigan, do hereby certify that Ordinance No 2022-02, adopted by the Township of Birch Run Board of Trustees on the 8th day of February 2022, was recorded in full in the Minutes of the Meeting of said Township Board on said date, and was signed by the Supervisor and the Clerk of the Township of Birch Run.

Dated: February 8, 2022.

_____
RILEY KIESSLING, Clerk

Date of Publication: February 23, 2022.

Newspaper: Birch Run/Bridgeport Herald

***The balance of this page is intentionally left blank***

11

# EXHIBIT 3

TOWNSHIP OF BIRCH RUN
SAGINAW COUNTY, MICHIGAN

RESOLUTION TO APPROVE RECREATIONAL MARIHUANA SCORECARD
NO. 2022-09

   At a Regular Meeting of the Birch Run Township Board, Township of Birch Run, Saginaw County, Michigan, held at the Township Meeting Room on the 8th day of February, 2022, at 7 o'clock Eastern Standard Time.

PRESENT: Letterman, C. Trinklein, Parlberg, Sheridan, Kiessling, D. Trinklein Jr, Watts
ABSENT: None

      The following resolution was made by Letterman and seconded by C. Trinklein:

      WHEREAS, Birch Run Township has permitted certain types and quantities of recreational-marihuana establishments to exist in the Township pursuant to applicable Township Ordinances and applicable state law.

      WHEREAS, Birch Run Township has established a procedure for applicants to apply for Recreational Marihuana Operational Licenses.

      WHEREAS Birch Run Township desires to create a Recreational Marihuana Application Scorecard for the accurate assessment of potential applicants.

      THEREFORE, BE IT RESOLVED: That the Birch Run Township Board hereby approves the attached Birch Run Township Recreational Marihuana Application Scorecard.

All resolutions or parts of resolutions insofar as they conflict with the provisions hereof are rescinded to the extent of such conflict.

      The foregoing resolution was duly adopted at a regular meeting of the Birch Run Township Board held on the 8th day of February, 2022.

    YEAS: Letterman, Parlberg, Sheridan, D. Trinklein Jr, C. Trinklein
    NAYS: Kiessling, Watts
    ABSTENTIONS: None

**RESOLUTION DECLARED ADOPTED.**

State of Michigan   )
               ) ss
County of Saginaw  )

      I, the undersigned, the duly qualified and acting Township Clerk for Birch Run Township, Saginaw County, Michigan, DO HEREBY CERTIFY that the foregoing is a true and complete copy of certain proceedings taken by the Township Board of said Township at a regular meeting held on the 8th day of February, 2022.

IN WITNESS WHEREOF, I have hereunto fixed my official signature on this 9th day of February 2022.

_____
Corey Trinklein, Clerk
Birch Run Township

Applicant:
Address:
License:
Date:

# Recreational Marijuana Scoring Results

| Recreational Marijuana Facilities Scoring Criteria | | | |
|---|---|---|---|
| **Description** | **Criteria** | **Maximum Points** | **Earned Points** |
| **I.    Business Ownership** | | | |
| Ownership Structure | Content and sufficiency of information; Professionalism of submitted documentation including clear labeling of required items. | 1 | |
| Organizational Chart Provided | Organizational chart provided with application materials. | 1 | |
| Ownership Interests | At least 1 owner is an honorably discharged military veteran. | 1 | |
| | At least 1 owner has an advanced medical degree. | 1 | |
| Detailed Business Plan | Plan must be detailed with at least 3 years' valid pro forma included. | 1 | |
| Owner-Occupied Building | At least 1 owner owns the building where the recreational marijuana facility is located. | 1 | |
| Owner—Resident of Disproportionately-Impacted Community. | At least 1 owner resides in a municipality that has been disproportionately impacted by marijuana prohibition and enforcement (as defined by the Marihuana Regulatory Agency) and has so resided at least 5 years of the last 10 years. | 1 | |
| **Total - Business Ownership** | | **7** | |

**Birch Run Township**

| Recreational Marijuana Facilities Scoring Criteria | | | |
|---|---|---|---|
| Description | Criteria | Maximum Points | Earned Points |
| **II.    Financial Stability** | | | |
| Applicant has disclosed and documented sources and total amount of capitalization to operate and maintain facility of: | At least $300,000 | 1 | |
| | At least $500,000 | 1 | |
| | At least $1,000,000 | 1 | |
| Sufficient Financial Resources | CPA attested financial statements attached | 1 | |
| | Applicant, or any owners of Applicant haven't filed for bankruptcy in the last seven (7) years | 1 | |
| | Applicant, or any owners of Applicant have not had IRS liens placed upon any financial accounts or property | 1 | |
| Tax Return History | Applicant has filed both personal and corporate income tax returns for the past five (5) years | 1 | |
| **Total - Financial Stability** | | **7** | |

| Recreational Marijuana Facilities Scoring Criteria | | | |
|---|---|---|---|
| Description | Criteria | Maximum Points | Earned Points |
| **III.    Business Experience** | | | |
| Documented Business History | Nature and type of prior business, years of operation, | 1 | |
| Current Business Ownership Documentation | Description of current business ownership, | 1 | |
| Business Diversification | Applicant holds other commercial licenses | 1 | |
| Medical Certifications | Applicant holds and maintains documented medical certifications or licenses | 1 | |
| Compliance History | Applicant has not had a permit or license revoked (including for medical or recreational Marijuana) by any state or municipality | 1 | |
| | Applicant has not engaged in an unapproved medical or recreational Marijuana provisioning center or dispensary in any Michigan municipality | 1 | |
| | Documented history or regulatory compliance at federal, state, and local levels | 1 | |
| | No history of federal, state, or local complaints/incidents | 1 | |
| Business Litigation | Applicant has not been involved and is currently not involved in any business litigation | 1 | |
| **Total - Business Experience** | | **9** | |

| Recreational Marijuana Facilities Scoring Criteria | | | |
|---|---|---|---|
| **Description** | **Criteria** | **Maximum Points** | **Earned Points** |
| **IV.     Business Operations** | | | |
| Job Creation | Applicant plans to create three (3) or more full-time jobs | 1 | |
| Applicant Describes a Staffing Plan to: | Employ one (1) or more Saginaw County residents | 1 | |
| | Employ one (1) or more Township residents | 1 | |
| | Employ the chronically underemployed | 1 | |
| | Ensure safe dispensing, adequate security, theft prevention, and maintenance of confidential information | 1 | |
| | Provide training and educational opportunities for employees including best practices for patient confidentiality, tracking, fraud etc. | 1 | |
| | Requires employees to take cannabis-training courses | 1 | |
| | Provides equipment, standards, and procedures for safe operation of its facilities and engages employees on best practices | 1 | |
| Employee Compensation | Applicant proposes to pay a living wage (at least 200% of the Federal Poverty Level for a family of two  (2)) | 1 | |
| | Applicant describes employing three (3) or more employees at more than $15/hour | 1 | |
| | Applicant describes a plan to offer employee benefits in addition to wages or salary | 1 | |
| | Applicant describes a plan to provide employer paid health insurance | 1 | |
| Employee Integrity | Applicant has a documented code of ethics and plan to ensure honesty and integrity of employees | 1 | |
| **Total - Business Operations** | | **13** | |

**Birch Run Township**                                              4

| Recreational Marijuana Facilities Scoring Criteria | | | |
|---|---|---|---|
| Description | Criteria | Maximum Points | Earned Points |
| V.        Facility Improvements, Maintenance, Use and Security | | | |
| Capital Improvement | Applicant proposes facility capital improvement in excess of $100,000 | 1 | |
| | Applicant proposes facility capital improvement in excess of $500,000 | 1 | |
| Building | Applicant has provided rendering and/or blueprints or plans of facility as proposed to be used | 1 | |
| Maintenance Plan | Applicant provides plan to inspect to ensure interior and exterior integrity and maintenance | 1 | |
| | Applicant provides plan to keep exterior free of trash, graffiti, loiterers, etc. | 1 | |
| Traffic | Applicant describes expected daily number of customers and proposed volume of vehicular traffic | 1 | |
| Facility Plan Provides for: | Secure storage of recreational Marijuana | 1 | |
| | Preventing visibility of recreational Marijuana from facility exterior or common public area within a building or structure | 1 | |
| | Back-up power generation | 1 | |

| | | | |
|---|---|---|---|
| Insurance Plan | Applicant demonstrates access and ability to insure facility, contents, and employees through property, business, general liability, and auto and worker's compensation insurances and demonstrates willingness to name Township as additional  insured. | 1 | |
| Waste Management | Applicant describes a plan for disposal of waste | 1 | |
| | Applicant describes "green" business practices and energy conservation techniques | 1 | |
| Security Plan | Applicant provided a detailed security plan | 1 | |
| | Applicant provided copies of material safety data sheets for hazardous compounds | 1 | |
| | Applicant has 24/7 video monitoring of the interior and exterior of the facility | 1 | |
| | Applicant has employed a security guard during business hours | 1 | |
| | If no security guard, then applicant has a security system in place to alert owner and police to possible tampering with the facility or its contents. | 1 | |
| Facility will be equipped with the following alarms: | Facility entry and exit | 1 | |
| | Glass breakage | 1 | |
| | Panic buttons | 1 | |
| | Motion sensors | 1 | |
| **Total - Facility Improvements, Maintenance, Use and Security** | | **21** | |

| Recreational Marijuana Facilities Scoring Criteria | | | |
|---|---|---|---|
| Description | Criteria | Maximum Points | Earned Points |
| VI.          Community Outreach and Relations | | | |
| Applicant has Demonstrated and Described: | A plan to meet with neighborhood organizations, business association, crime watch and other neighborhood organizations to provide contact information for questions, concerns, issues, etc. | 1 | |
| | A plan to provide on-going public information program to inform Township residents of cannabis issues and proper/safe/legal use of cannabis products | 1 | |
| | A community commitment program and volunteerism plan | 1 | |
| | Past acts of volunteerism and community involvement | 1 | |
| Applicant has identified: | A specific owner and/or employee to serve as a liaison with the Township | 1 | |
| | A specific owner and/or employee to serve as a liaison with the surrounding community | 1 | |
| **Total - Community Outreach and Relations** | | **6** | |

| Recreational Marijuana Facilities Scoring Criteria | | | |
|---|---|---|---|
| Description | Criteria | Maximum Points | Earned Points |
| **VII.** **Compliance with Master Plan Objectives** | | | |
| Promote General Business in the Township | Redevelop vacant commercial building | 1 | |
| Improve quality of aging infrastructure | Utilize Low Impact Development Practices for stormwater management (rain gardens, bioswales) | 1 | |
| | Use 25% permeable pavement for parking surface | 1 | |
| | Use 50% permeable pavement for parking surface | 1 | |
| | Use 100% permeable pavement for parking surface | 1 | |
| | Utilize solar energy for onsite energy usage | 1 | |
| Open Space Preservation | Provide 10% additional greenbelt landscaping | 1 | |
| | Provide 25% additional greenbelt landscaping | 1 | |
| | Provide 50% additional greenbelt landscaping | 1 | |
| Public Safety | At least 500 feet from another medical or recreational marijuana facility | 1 | |
| Public Safety | At least 1,000 feet from another medical or recreational marijuana facility | 1 | |
| | At least 1,500 feet from another medical or recreational marijuana facility | 1 | |
| | Provide a sidewalk/ pathway along frontage of facility | 1 | |

| Complete Streets<br>**Total - Master Plan** | Provide at least 500 feet of pathway | 1 | |
| | Provide at least 1,000 feet of pathway | 1 | |
| | Provide at least 1,500 feet of pathway | 1 | |
| | | **16** | |
| | | | |

**Summary Results**

| Criteria | Maximum Points Available | Earned Points |
|---|:---:|---|
| **I.**   **Business Ownership** | 7 | |
| **II.**   **Financial Stability** | 7 | |
| **III.**   **Business Experience** | 9 | |
| **IV.**   **Business Operations** | 13 | |
| **V.**   **Facility Improvements, Maintenance, Use and Security** | 21 | |
| **VI.**   **Community Outreach and Relations** | 6 | |
| **VII.**   **Compliance with Master Plan** | 16 | |
| **FINAL TOTAL:** | **79** | |

# EXHIBIT 4

TOWNSHIP OF BIRCH RUN
SAGINAW COUNTY, MICHIGAN

RESOLUTION TO APPROVE RECREATIONAL MARIHUANA APPLICATION
NO. 2022-08

At a Regular Meeting of the Birch Run Township Board, Township of Birch Run, Saginaw County, Michigan, held at the Township Meeting Room on the 8th day of February, 2022, at 7 o'clock Eastern Standard Time.

PRESENT: Letterman, C. Trinklein, Parlberg, Sheridan, Kiessling, D. Trinklein Jr, Watts
ABSENT: None

The following resolution was made by C. Trinklein and seconded by D. Trinklein Jr.:

WHEREAS, Birch Run Township has permitted certain types and quantities of recreational-marihuana establishments to exist in the Township pursuant to applicable Township Ordinances and applicable state law.

WHEREAS, Birch Run Township has established a procedure for applicants to apply for Recreational Marihuana Operational Licenses.

WHEREAS Birch Run Township desires to create an application for Recreational Marihuana Operational Licenses.

THEREFORE, BE IT RESOLVED:  That the Birch Run Township Board hereby approves the attached Birch Run Township Recreational Marihuana Operational License Application.

All resolutions or parts of resolutions insofar as they conflict with the provisions hereof are rescinded to the extent of such conflict.

The foregoing resolution was duly adopted at a regular meeting of the Birch Run Township Board held on the 8th day of February, 2022.

YEAS: Letterman, Parlberg, Sheridan, D. Trinklein Jr, C. Trinklein, Watts, Kiessling
NAYS: None
ABSTENTIONS: None

**RESOLUTION DECLARED ADOPTED.**

State of Michigan    )
                     ) ss
County of Saginaw  )

I, the undersigned, the duly qualified and acting Township Clerk for Birch Run Township, Saginaw County, Michigan, DO HEREBY CERTIFY that the foregoing is a true and complete copy of certain proceedings taken by the Township Board of said Township at a regular meeting held on the 8th day of February, 2022.

IN WITNESS WHEREOF, I have hereunto fixed my official signature on this 9th day of February 2022.

_____
Corey Trinklein, Clerk
Birch Run Township

# **EXHIBIT 5**

Birch Run Township
8425 Main Street
Birch Run, MI 48415
989-624-9773
Birchruntwp.com

| Date Received: |
| --- |
| Time: |
| Initials: |

**All required information must be submitted at the time of application. Attach additional pages when necessary.**

**Non-Refundable Fee For All License Types**

**$5,000 Initial License**  ☐        **$5,000 Renewal Fee**  ☐

| Applicant Information | | |
| --- | --- | --- |
| Applicant Name: | | Date of Birth: |
| Business Name: | | Phone: |
| Business Address: | | Secondary Phone: |
| City/State | | Zip: |
| Business Mailing Address (if different) | City/State: | Zip: |
| Email Address | Secondary Email Address | |

APPLICANT (check one)
☐ Individual /Sole Proprietor
☐ Partnership
☐ LLC
☐ Corporation Type:_____
☐ D/B/A
☐ Other/Specify: _____

TYPE OF FACILITY BEING APPLIED FOR:
( ) Retailer

Has the applicant been denied an application for a marihuana facility from any jurisdiction? Yes      No

If yes state when, where and why: _____

Has the applicant had a marihuana facility license suspended or revoked by any jurisdiction? Yes      No

If yes state when, where and why: _____

_____
_____
_____
_____

SUBMIT $5,000 NON-REFUNDABLE APPLICATION FEE PER LICENSE TYPE WITH THIS APPLICATION FOR A NEW LICENSE OR A RENEWAL LICENSE.

ATTACH COPY OF PRE-QUALIFICATION APPROVAL LETTER, IF AVAILABLE, FROM THE STATE OF MICHIGAN, DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS.

ATTACH LIST (PAGE 6 OF THIS APPLICATION) DISCLOSING THE IDENTITY OF EVERY PERSON HAVING ANY OWNERSHIP INTEREST IN THE APPLICANT WITH RESPECT TO WHICH THE LICENSE IS SOUGHT. THIS SHOULD CONTAIN THE INFORMATION REQUIRED TO BE SUBMITTED TO THE STATE OF MICHIGAN UNDER APPLICABLE REGULATIONS.

ATTACH COPY OF ALL INFORMATION REQUIRED TO BE SUBMITTED TO THE STATE OF MICHIGAN RELATED TO A RECREATIONAL MARIHUANA LICENSE.  ATTACH COPY OF ALL INFORMATION RELATED TO MATTERS ADDRESED IN BIRCH RUN TOWNSHIP RECREATIONAL MARIHUANA CHECKLIST.

| Property Information: | |
|---|---|
| Business Site Address:  Acreage in Parcel: | Tax Parcel #: |
| LI  **Owned**          Date of Purchase: | |
| LI  **Leased**          Start Date: | End Date: |
| If Leased:      Property Owner Name: | |
| Phone: _____Address:_____ | |
| Will facility be in an existing structure?  LI  **Yes**              LI  **No** | How many square feet? |
| Will a new structure or addition be built?  LI  **Yes**              LI  **No** | How many square feet? |
| Is there a security alarm in place?  LI  **Yes**              LI  **No** | If there is a security alarm in place please describe what type: |
| Provide the name, address and telephone number of the security alarm company: | |

**AFFIDAVIT:**

I (we) the undersigned affirm that the foregoing answers, statements, and information, and any attachments, are in all respects true and correct to the best of my (our) knowledge and belief. I the undersigned understand that this application is for conditional approval to operate a medical marijuana facility or facilities within Birch Run Township and that a conditionally-approved Township application may be used as part of an application to the State of Michigan for a Medical Marijuana Facility or Facilities to be operated within the Township.

I, the undersigned, understand that if I am conditionally-authorized by Birch Run Township but my application to the State of Michigan for a state operating license is denied, that the Township Clerk will cancel the conditional authorization and I will forfeit the initial application fee.

I understand that I do not have the right to a particular location or zoning district by making this application. I understand that I will be required to submit a separate zoning application, together with an application fee and escrow amount, to be utilized by Birch Run Township in processing my zoning application; which is separate from the initial application fee that I have paid to the Township as part of this application.

I will not operate a medical marijuana facility or facilities within Birch Run Township unless and until I have obtained approval for the location and site plan approval as required by the Birch Run Township Zoning Ordinance, and a state license for the facility or facilities.

I agree to report any changes to the information in this application to the Township Clerk **within ten (10) business days** of such changes.

| SUBMITTAL INSTRUCTIONS AND FEES |
| --- |
| This application must be returned with a payment for the $5,000 non-refundable application fee to the following address:     Birch Run Township Clerk<br>8425 Main Street<br>Birch Run, MI 48415<br>Telephone: 989-624-9773 Fax: 989-624-1177<br>*Application fee check shall be made out to Birch Run Township* |

**By signing below the Applicant is affirming that he/she/it is familiar with and has a working knowledge of the requirements of all Birch Run Township ordinances and relevant state law.  A copy of the Township's Recreational Marijuana Ordinance(s) are available on the Township's website at www.birchruntwp.com**

_____          _____          _____          _____
**Applicant's Signature(s)**                          **Date**          **Co-Applicant's Signature(s)**                     **Date**

| Township Office Use Only: |
| --- |

( ) Application Fee          Cash _____     Check No. _____     Credit Card_____

Application reviewed on: Date: _____ Application reviewed by:
( ) complete ( ) incomplete. Requires

Applicant notified on (date) _____by (initials)
Comments_____
_____
_____

**Recreational Marijuana Facility – Zoning Assurance Letter**

By initialing each section and signing below, I acknowledge the following to be

true:

_____ I have reviewed and understand applicable zoning regulations pertaining to the special uses, locations, and restrictions for recreational marijuana facilities in Birch Run Township, and that if the property identified with this application does not meet said regulations, the application will be denied.

_____ I understand that the property is subject to other regulations of the zoning ordinance, and any use, occupancy, and/or development of the property will need to be in compliance with all regulations of the zoning ordinance, including but not limited to:

- Off-street Parking and Loading Requirements
- Landscaping and Screening
- Walls and Fences
- Signs
- Site Development Standards
- Site Plan Review
- Special Land Use

Signature of Applicant                                    Signature of Co-Applicant

_____          _____

Date                                                             Date

_____          _____

**Recreational Marijuana Facilities Criminal History Disclosure and Background Record Authorization**

As part of the Licensing Process, each person listed on the information submitted to the State of Michigan under
the Regulations and Rules promulgated by the Marijuana Regulatory Agency must also complete this form and submit this form with a copy  of
his/her Michigan ID or Driver's License. All questions on this form must be answered completely and truthfully. A separate form for each individual
listed is required.

| |
|---|
| A **separate form for each individual listed on the Medical Marihuana Facility Permit application is required, including applicant, stakeholders, operators and employees.** |
| **Full Name:** |
| **Maiden Name or Aliases:** |
| **Michigan ID or Driver's License Number:** |
| **Home Address:**                          **City:**                          **State:**                          **Zip:** |
| **Phone:**                    **Date of Birth:**                          **Gender:** |

I, authorize the release of any and all information from any appropriate agency regarding my criminal conviction history to
the Birch Run Township Clerk's Office. **I understand that my race, color, sex, age, religion, national origin, height,
weight, marital status, familial status, veteran status, citizenship, handicap/disability, gender identity, sexual
orientation, genetic information, or as otherwise in accordance with all Federal or State law, or local
regulations will not be made part of my application and that none of these items will be considered in the
review of my permit application.** I acknowledge that a complete background investigation, including, but not limited to,
a State Police Criminal Conviction Record Check will be done. In addition, I agree to cooperate with the investigator /
inspector assigned to screening this application.

Signature:_____         Date:_____

| | | |
|---|---|---|
| 1. | Has the applicant ever been arrested, charged, indicted or imprisoned for a felony involving controlled | substances as defined under the |
| | Michigan Public Health Code, MCL 333.11041 et seq., the federal law, or the law of any other state? | Yes            No |
| 2. | Has the applicant ever been arrested, charged, indicted or imprisoned for any other type of felony | under the law of Michigan, the United |
| | States, or any other state? | Yes            No |
| | If you answered Yes to either or  both of the  above questions, the applicant must complete the following section. | |

| Offense: Arrest/Charge Indictment/Conviction | Date | Arresting Agency | Name & Location of Court | Case Caption | Case/Docket Number | Disposition |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Date of Conviction | Law under which the person was convicted | SID Number |
|---|---|---|
| | | |
| | | |

I hereby certify that the information provided above is accurate to the best of my knowledge

Signature: _____ Date: _____

| Stakeholder Information: All Corporations, LLCs, LLPs and Other non-individual entities must complete this sheet for every additional Applicant or Stakeholder.   You must designate one Stakeholder as an Emergency Contact. | |
|---|---|
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| City:                                    **State:** | **Zip** Code:                              **Phone:** |
| **Business Email:** | **Personal Email:** |
| **Emergency Contact:**<br>**YES NO (circle one)** | |
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| **City:**                                **State:** | **Zip Code:**                              **Phone:** |
| **Business Email:** | **Personal Email:** |
| **Emergency Contact:**<br>**YES NO (circle one)** | |
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| **City:**                                **State:** | **Zip Code:**                              **Phone:** |
| **Business Email:** | **Personal Email:** |
| **Emergency Contact:**<br>**YES NO (circle one)** | |
| **Name:** | **Title** |
| **Maiden name or Aliases:** | **Home Address:** |
| **City:**                                **State** | **Zip Code:**                              **Phone:** |
| **Business Email:** | **Personal Email:** |
| **Emergency Contact:**<br>**YES NO (circle one)** | |
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| **City:**                                **State:** | **Zip Code**                              **Phone:** |
| **Business Email:** | **Personal Email:** |
| **Emergency Contact:**<br>**YES NO (circle one)** | |
| *Attach an additional sheet if there are more persons to list* | |

**Operator and Employee Information: This must be completed for every operator and employee of the facility.  You must also submit a photo identification for each.**

| | |
|---|---|
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| City:                            **State:** | Zip Code:          **Phone:** |
| **Business Email:** | **Personal Email:** |
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| **City:**                          **State:** | **Zip Code:          Phone:** |
| **Business Email:** | **Personal Email:** |
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| **City:**                          **State:** | **Zip Code:          Phone:** |
| **Business Email:** | **Personal Email:** |
| **Name:** | **Title** |
| **Maiden name or Aliases:** | **Home Address:** |
| **City:**                          **State** | **Zip Code:          Phone:** |
| **Business Email:** | **Personal Email:** |
| **Name:** | **Title:** |
| **Maiden Name or Aliases:** | **Home Address:** |
| **City:**                          **State:** | **Zip Code          Phone:** |
| **Business Email:** | **Personal Email:** |

*Attach an additional sheet if there are more persons to list*

BIRCH RUN TOWNSHIP
RECREATIONAL FACILITIES LICENSCE APPLICATION

## **ATTESTATION  A**

### **APPLICANT'S ACKNOWLEDGEMENT, AGREEMENT AND CONSENT**
**(To be completed and signed by business/entity/individual seeking licensure)**
Do not sign until notary is present

I, _____ , (applicant) hereby acknowledges that any issuance of a license is a privilege. I have the responsibility to prove that I am eligible, suitable and qualified to be licensed. I must accept any risk of adverse public notice, embarrassment, criticism, or other action, or financial loss, which may result from action with respect to an application or the public disclosure of information, requested in this form, and expressly waive any claim for damages as a result thereof. Information not called for in this application or in addition to that provided in response to this application, may be requested.

I, as the applicant submitting this application, hereby certify that I do not have an interest in any other operating license that is prohibited by the Michigan Regulation and Taxation of Marihuana Act ("MRTMA"), Initiated Law 1 of 2018, or any associated rules or regulations.

I hereby acknowledge that I am under a continuing duty to promptly disclose to the Birch Run Township any changes in the information provided in the application and requested materials submitted to the Township. To comply with this requirement, I hereby acknowledge that I must submit a letter to the Township stating any changes with reference to the specific information within the application to which the changes pertain.

I hereby consent to inspections, searches, and seizures as provided in any Birch Run Township Ordinances and/or applicable statutes. This consent is authorization to review and inspect tax records administered under the Michigan Revenue Act, 1941 PA 122.

I hereby acknowledge that if requested by the Birch Run Township at any point in time to provide background verification of all employees.

**I hereby agree to applicable permits and inspections required by the Birch Run Township Ordinances and agree to pay applicable fees as outlined in the Birch Run Township Fee Schedule and/or relevant ordinances pertaining to permits and inspections and acknowledge that said fees are not considered part of the application fee.**

**I acknowledge that the granting of a Marihuana Provisional License or Facility License does not convey a property right or other entitlement.**

I affirm, under the penalties of perjury, that the information set forth in this document is true and complete, to the best of my knowledge.

_____        _____        _____
Applicant Signature                              Date:                              Applicant Printed Name

STATE OF MICHIGAN    )
                                    ) ss.
COUNTY OF SAGINAW  )

The foregoing Attestation was executed and acknowledged before me on the _____ day of _____, 2018, by _____

Applicant

_____
NAME OF NOTARY
Notary Public for _____ County, Michigan
Acting in the County of _____
My Commission Expires: _____

BIRCH RUN TOWNSHIP
MARIHUANA FACILITIES LICENSE APPLICATION

## **ATTESTATION B**

**APPLICANT'S VERIFICATION & AFFIDAVIT OF DISCLOSURE**
**(To be completed and signed by business/entity/individual seeking licensure)**
Do not sign until notary is present
_____ , (applicant) hereby acknowledge:

      1     I am the individual responsible for submitting this application and have full authority to execute this verification and affidavit of disclosure.

      2.    I swear (or affirm) that the information contained in the application packet is true, complete, and accurate to the best of my knowledge and belief and holds no material falsehood.

      3.    I swear (or affirm) that there are no agreements or understandings with any person or entity and no present intent to pay any sums of money or give anything of value as, including without limitation, a finder's fee or commission to any person or entity related to the interest in this application.

I affirm, under the penalties of perjury, that the information set forth in this document is true and complete, to the best of my knowledge.

_____     _____    _____
Applicant Signature                  Date:                    Printed Name

STATE OF MICHIGAN  )
                   ) ss.
COUNTY OF SAGINAW )

The foregoing Attestation was executed and acknowledged before me on the _____ day of _____, 2022, by _____

      Applicant
_____
NAME OF NOTARY
Notary Public for _____ County, Michigan
Acting in the County of _____
My Commission Expires: _____

BIRCH RUN TOWNSHIP
MARIHUANA FACILITIES LICENSE APPLICATION

## ATTESTATION C

## ACKNOWLEDGEMENT OF FEDERAL LAW & RELEASE OF LIABILITY
**(To be completed and signed by applicant and/or any professional representative.)**
Do not sign until notary is present

I, _____ , being first duly sworn upon oath, affirmation or depose hereby acknowledge the following:

The Federal Controlled Substances Act, Title II of the Comprehensive Drug Abuse Prevention and Control Acts of 1970, 21 U.S.C. § 801 *et seq.,* regulates marihuana as a Schedule I controlled substance, for which there is "no currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(1)(B). Although the State of Michigan has recognized and authorized the use of the medical marihuana pursuant to the Medical Marihuana Act, 2008 IL 1, MCL 333.26421 to 333.26430, has authorized the licensing of medical marihuana facilities pursuant to the Medical Marihuana Facilities Licensing Act, 2016 PA 281, MCL 333.27101 to MCL 333.27801, and has provided for a statewide monitoring system in the Marihuana Tracking Act, 2016 PA 282, MCL 333.27901 to 333.27904, these state authorized activities remain prohibited by federal law.

I understand that a Michigan marihuana facility license does not insulate or shield me or my business from federal seizure and/or forfeiture as allowed by federal law and does not insulate me from federal criminal arrest and/or prosecution.

I understanding that choosing to file an application for a marihuana facility license and, if issued a license, choosing to establish and operate a marihuana facility pursuant to that license, is done so at my own risk.

I understand that maintaining a valid marihuana facility license by the State of Michigan is a condition for the issuance and maintenance of a marihuana facility license by the Birch Run Township.

By my signature and attestation to this form, I hereby completely release and forever discharge the Birch Run Township and its respective employees, agents, facilities, insurers, indemnors, successors, heirs and/or assigns from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which I may now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way arise out of my application for a marihuana facility license and, if issued a license, my operation of a marihuana facility.

I swear that the statements made in this application, including all attachments thereto, are true and free of any material falsehood and misrepresentation.

_____   _____   _____
Applicant/Representative Signature      Date                    Applicant/Representative Printed Name


STATE OF MICHIGAN    )
                     ) ss.
COUNTY OF SAGINAW  )


The foregoing Attestation was executed and acknowledged before me on July 13, 2018, by JILL M. BOWEN.


_____
Name of Notary
Notary Public for _____ County, Michigan
Acting in the County of _____
My Commission Expires: _____

# **<u>EXHIBIT 6</u>**

Applicant:
Address:
License:
Date:

# Birch Run Township
# Recreational Marijuana Checklist

On March 25, 2022, Birch Run Township's ("the Township") Application Period for Adul-Use/Recreational ("Recreational") Marihuana licenses relating to the Marihuana retailer license, as defined by MCL 333.27953, will open.  An Application Period for Applicants desiring to obtain a Township Recreational Marihuana license as a Marihuana secure transporter, as defined by MCL 333.27953, will occur at a subsequent time to be established by the Township Board.

The Township will accept Applications (and associated materials) from Applicants desiring to obtain Township Recreational Marihuana license relating to Marihuana retailer, as defined by MCL 333.27953 ("License"), from March 25, 2022, to April 22, 2022 at 5:00 p.m.  Applications for a License that are submitted after April 22, 2022, at 5:00 p.m. will not be accepted or considered in any way.

An Applicant may submit an Application for a License to the Township in one of two manners: First, the Application may be hand delivered to the Township's Offices (8425 Main St., Birch Run, MI 48415) during regular business hours; second, the Application may be sent to the Township (at the above-stated address) via third-party carrier, e.g., United States Postal Service, Federal Express, UPS, etc.  However, it is the sole and entire responsibility of the Applicant to ensure that the Application (and all supporting materials) are _received_ by the Township no later than April 22, 2022, at 5:00.  Applications which are postmarked/were sent on or before April 22, 2022, but are received by the Township after April 22, 2022, at 5:00 p.m. will not be accepted or considered.  All Applications should be addressed to the attention of the Township Clerk.  No electronic applications/e-mail applications will be accepted or considered.

Enclosed herewith is a checklist of pertinent information which should be addressed by the Applicant either in the Application itself or in supporting documentation/materials that are submitted to the Township contemporaneous with and in support of the Application.

On or before May 6, 2022, the Township will contact all Applicants to schedule an in-person interview with the Township's Recreational Marihuana Sub-Committee.

**Birch Run Township**

| Description | Criteria |
|---|---|
| Ownership Structure | Content and sufficiency of information; Professionalism of submitted documentation including clear labeling of required items. |
| Organizational Chart Provided | Organizational chart provided with application materials. |
| Ownership Interests | At least 1 owner is an honorably discharged military veteran. |
| | At least 1 owner has an advanced medical degree. |
| Detailed Business Plan | Plan must be detailed with at least 3 years' valid pro forma included. |
| Owner-Occupied Building | At least 1 owner owns the building where the recreational marijuana facility is located. |
| Owner—Resident of Disproportionately-Impacted Community. | At least 1 owner resides in a municipality that has been disproportionately impacted by marijuana prohibition and enforcement (as defined by the Marihuana Regulatory Agency) and has so resided at least 5 years of the last 10 years. |

| Description | Criteria |
|---|---|
| Applicant has disclosed and documented sources and total amount of capitalization to operate and maintain facility of: | At least $300,000 |
| | At least $500,000 |
| | At least $1,000,000 |
| Sufficient Financial Resources | CPA attested financial statements attached |
| | Applicant, or any owners of Applicant haven't filed for bankruptcy in the last seven (7) years |
| | Applicant, or any owners of Applicant have not had IRS liens placed upon any financial accounts or property |
| Tax Return History | Applicant has filed both personal and corporate income tax returns for the past five (5) years |

| Description | Criteria |
|---|---|
| Documented Business History | Nature and type of prior business, years of operation, |
| Current Business Ownership Documentation | Description of current business ownership, |
| Business Diversification | Applicant holds other commercial licenses |
| Medical Certifications | Applicant holds and maintains documented medical certifications or licenses |
| Compliance History | Applicant has not had a permit or license revoked (including for medical or recreational Marijuana) by any state or municipality |
| | Applicant has not engaged in an unapproved medical or recreational Marijuana provisioning center or dispensary in any Michigan municipality |
| | Documented history or regulatory compliance at federal, state, and local levels |
| | No history of federal, state, or local complaints/incidents |
| Business Litigation | Applicant has not been involved and is currently not involved in any business litigation |

| Description | Criteria |
|---|---|
| Job Creation | Applicant plans to create three (3) or more full-time jobs |
| Applicant Describes a Staffing Plan to: | Employ one (1) or more Saginaw County residents |
| | Employ one (1) or more Township residents |
| | Employ the chronically underemployed |
| | Ensure safe dispensing, adequate security, theft prevention, and maintenance of confidential information |
| | Provide training and educational opportunities for employees including best practices for patient confidentiality, tracking, fraud etc. |
| | Requires employees to take cannabis-training courses |
| | Provides equipment, standards, and procedures for safe operation of its facilities and engages employees on best practices |
| Employee Compensation | Applicant proposes to pay a living wage (at least 200% of the Federal Poverty Level for a family of two (2)) |
| | Applicant describes employing three (3) or more employees at more than $15/hour |
| | Applicant describes a plan to offer employee benefits in addition to wages or salary |
| | Applicant describes a plan to provide employer paid health insurance |
| Employee Integrity | Applicant has a documented code of ethics and plan to ensure honesty and integrity of employees |

| Description | Criteria |
|---|---|
| Capital Improvement | Applicant proposes facility capital improvement in excess of $100,000 |
| | Applicant proposes facility capital improvement in excess of $500,000 |
| Building | Applicant has provided rendering and/or blueprints or plans of facility as proposed to be used |
| Maintenance Plan | Applicant provides plan to inspect to ensure interior and exterior integrity and maintenance |
| | Applicant provides plan to keep exterior free of trash, graffiti, loiterers, etc. |
| Traffic | Applicant describes expected daily number of customers and proposed volume of vehicular traffic |
| Facility Plan Provides for: | Secure storage of recreational Marijuana |
| | Preventing visibility of recreational Marijuana from facility exterior or common public area within a building or structure |
| | Back-up power generation |

| Insurance Plan | Applicant demonstrates access and ability to insure facility, contents, and employees through property, business, general liability, and auto and worker's compensation insurances and demonstrates willingness to name Township as additional  insured. |
| --- | --- |
| Waste Management | Applicant describes a plan for disposal of waste |
| | Applicant describes "green" business practices and energy conservation techniques |
| Security Plan | Applicant provided a detailed security plan |
| | Applicant provided copies of material safety data sheets for hazardous compounds |
| | Applicant has 24/7 video monitoring of the interior and exterior of the facility |
| | Applicant has employed a security guard during business hours |
| | If no security guard, then applicant has a security system in place to alert owner and police to possible tampering with the facility or its contents. |
| Facility will be equipped with the following alarms: | Facility entry and exit |
| | Glass breakage |
| | Panic buttons |
| | Motion sensors |

| Description | Criteria |
|---|---|
| Applicant has Demonstrated and Described: | A plan to meet with neighborhood organizations, business association, crime watch and other neighborhood organizations to provide contact information for questions, concerns, issues, etc. |
| | A plan to provide on-going public information program to inform Township residents of cannabis issues and proper/safe/legal use of cannabis products |
| | A community commitment program and volunteerism plan |
| | Past acts of volunteerism and community involvement |
| Applicant has identified: | A specific owner and/or employee to serve as a liaison with the Township |
| | A specific owner and/or employee to serve as a liaison with the surrounding community |

| Description | Criteria |
|---|---|
| Promote General Business in the Township | Redevelop vacant commercial building |
| Improve quality of aging infrastructure | Utilize Low Impact Development Practices for stormwater management (rain gardens, bioswales) |
| | Use 25% permeable pavement for parking surface |
| | Use 50% permeable pavement for parking surface |
| | Use 100% permeable pavement for parking surface |
| | Utilize solar energy for onsite energy usage |
| Open Space Preservation | Provide 10% additional greenbelt landscaping |
| | Provide 25% additional greenbelt landscaping |
| | Provide 50% additional greenbelt landscaping |
| Public Safety | At least 500 feet from another medical or recreational marijuana facility |
| Public Safety | At least 1,000 feet from another medical or recreational marijuana facility |
| | At least 1,500 feet from another medical or recreational marijuana facility |
| | Provide a sidewalk/ pathway along frontage of facility |
| Complete Streets | Provide at least 500 feet of pathway |

**Birch Run Township**                    9

| | Provide at least 1,000 feet of pathway |
| --- | --- |
| | Provide at least 1,500 feet of pathway |